November 12, 2020

Mr. M. Ryan Komppa
Apex Global Capital
16 Alcott St
Ladera Ranch, CA

Mr. Howard B Horowitz
Manager
NexTech Infrastructure Partners, LLC
2781 Marshall Lake Drive
Oakton, VA 22124-1153

Re:   Exclusive Private Placement Agreement

Dear Mr. Horowitz,

This letter agreement ("**Agreement**") confirms the engagement by NexTech Infrastructure Partners LLC ("**NexTech**") of M. Ryan Komppa ("**Mr. Komppa**") to be its exclusive outside placement agent to identify capital partners ("**Investors**") to partner with NexTech across its future property level investments as well as investments in NexTech and its related operating and investment entities. Mr. Komppa and NexTech maybe be referred to collectively as "Parties" or as singly as a "Party."

Mr. Komppa and NexTech contemplate that NexTech will principally invest in data center and technology infrastructure debt and equity asset classes throughout the United States and globally.

1. Scope of Services.
   Mr. Komppa undertakes to provide the following services ("Services"):

   a) Assist with developing NexTech's marketing materials to attract institutional caliber Investors for an anticipated programmatic joint venture, seed or growth capital investment, fund investment or one-off equity investments;
   b) Assist with developing relationships, channels, and due diligence review/acceptance with Investors; and
   c) Assist with equity capital raising.

   NexTech shall be responsible for its own due diligence investigation of any potential Investors. Mr. Komppa does not provide any assurances regarding the formation or performance of the investments or the performance of any surviving entity, nor commit to underwrite or provide any of the financing for investments.

   Mr. Komppa shall not be responsible for giving or obtaining commercial advice or special advice or services in areas which are outside Mr. Komppa's expertise such as are normally provided and carried out by a legal, accountancy or tax adviser or where NexTech has (or customarily would have) other advisers involved. NexTech shall obtain all such other advice as it reasonably requires, including, in particular, advice on compliance with

applicable laws and regulations, and shall communicate to Mr. Komppa any advice it receives which may be relevant to the provision of Mr. Komppa's services under this Agreement.

2. Term.
The term of this Agreement shall commence on the date hereof and shall expire three hundred sixty (360) days following such date unless extended in writing by both parties hereto.

3. Information Provided by the Parties.
Each Party represents and warrants to the other (a **"Recipient"**) that, to its actual knowledge, all information provided to the Recipient concerning itself and its activities and business will be accurate, current and complete in all material respects and does not and will not contain any untrue statement or omit to state a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading in any material respect. Furthermore, each Party will advise the Recipient promptly of the occurrence of any event, condition, or any other change to its activities or business to which it has actual knowledge which results in such information being inaccurate or incomplete in any material respect or containing an untrue statement of a material fact or omitting to state a material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading in any material respect. Each Party agrees that the Recipient shall be entitled to reasonably rely upon the accuracy and completeness in all material respects of all information, whether written or oral, supplied by each Party to the Recipient. Each Recipient shall not in any respect be responsible for the accuracy or completeness of any such information supplied to it or assume any obligation to verify any such information.

4. Confidentiality.
This agreement shall be subject to the non-disclosure agreement by and between NexTech and Mr. Komppa, attached herein as **Exhibit C**.

5. Compensation.
In consideration of Mr. Komppa providing the Services and subject to the provisions of this Agreement, NexTech shall pay to Mr. Komppa the fees as set out in the Fee Schedule attached to this Agreement as Exhibit A (the **"Fee Schedule"**). The Fees shall be payable by NexTech in accordance with the payment terms set out in Exhibit B to this Agreement.

6. Exclusivity
NexTech agrees to retain Mr. Komppa to provide the Services as exclusive outside capital raising agent for new equity for the term of this Agreement.

7. <u>Non-Circumvention</u>
The Parties mutually acknowledge that any Confidential Information (as described in the NDA, attached hereto and incorporated herein by this reference) or other information concerning business opportunities or projects and potential transactions, investors, and/or persons relating to the business opportunities or projects (the "**Business Opportunity** "), is the personal property of the Party who brought this information to the awareness of the other Party. For this reason, each Party agrees not to directly or indirectly, including through any affiliate or related entity or person, circumvent or bypass one another in any way. The Parties intend that this provision shall operate to prevent either Party from (i) taking advantage of a Business Opportunity introduced by the other Party, and/or (ii) circumventing the Party that introduced the Business Opportunity in such a manner that would operate to avoid fees and/or other remuneration being paid to the Party that introduced the Business Opportunity. Each Party agrees not to contact, or initiate contact with, at any time, for any purpose, directly or indirectly, any Business Opportunity introduced by the other Party, or any officer, director, shareholder, consultant, attorney, employee, agent or other affiliate of the Business Opportunity, unless such approval is specifically granted in written form by the introducing Party on a case by case basis. The non-introducing Party further agrees, during the term of this Agreement and for the two year period following expiration or termination of this Agreement for any reason, not to undertake any transaction or series of transactions of any kind with the Business Opportunity, or to collect any fees in connection with the Business Opportunity, without the prior written agreement of the introducing Party, which agreement may be withheld in the introducing Party's sole discretion.. All communications of the non-introducing Party and its affiliates with any Business Opportunity shall be through the introducing Party only, unless otherwise expressly permitted by the introducing Party. Parties will make reasonable efforts to immediately copy the introducing Party on all direct communications of the non-introducing Party and/or its affiliates with the Business Opportunity or the Project, if permitted. In the event a Party has a business or other relationship with any entity involved with the Business Opportunity which pre-exists the disclosure of the Business Opportunity , that Party shall notify the other Parties in writing of same, and this Section 7 shall apply only as to the exact and specific nature of the Business Opportunity involved in this Agreement.

8. <u>Indemnification by NexTech</u>.
NexTech will indemnify and hold Mr. Komppa harmless against any and all losses, claims, damages or liabilities (or actions in respect thereof) (including reasonable attorneys' fees incurred by Mr. Komppa) resulting from any claim brought or made against Mr. Komppa, to the extent that such are in connection with or result from this Agreement or Mr. Komppa's services to NexTech under the Agreement, including the provision of any information to the Investor(s), except to the extent that any loss, claim, damage, liability or expense is due to or the result of Mr. Komppa's breach of this Agreement or is found in a final judgment by a court of competent jurisdiction to have resulted from the wilful misconduct, bad faith or gross negligence of Mr. Komppa.

9. <u>Indemnification by Mr. Komppa</u>.
Mr. Komppa shall indemnify and hold harmless NexTech against any and all losses, claims, damages or liabilities (or actions in respect thereof) (including reasonable attorneys' fees incurred by NexTech and its investment vehicles) resulting from any claim brought or made against NexTech or the investments to the extent that such loss, claim, damage, liability or expense is (i) due to or results from Mr. Komppa's breach of this Agreement, or (ii) is found in a final judgment by a court of competent jurisdiction to have resulted from the willful misconduct, bad faith or gross negligence of Mr. Komppa.

10. <u>Representations and Warranties of NexTech</u>
NexTech hereby represents and warrants the following as of the date hereof:

   a. NexTech is not subject to any limitation, legal, judicial, contractual or otherwise, that would limit or prevent its right or ability to enter into this Agreement or to consummate a transaction; and

   b. NexTech has due authority to execute this Agreement and consummate a transaction hereunder, both of which have been duly authorized by all necessary corporate action on the part of NexTech, and upon execution this Agreement will constitute a valid, legal and binding obligation of NexTech.

11. <u>Representations and Warranties of Mr. Komppa</u>
Mr. Komppa hereby represents and warrants the following as of the date hereof:

   c. Mr. Komppa is not subject to any limitation, legal, judicial, contractual or otherwise, that would limit or prevent its right or ability to enter into this Agreement or to consummate a transaction; and

   d. Mr. Komppa has due authority to execute this Agreement and consummate a transaction hereunder, both of which have been duly authorized by on the part of Mr. Komppa, and upon execution this Agreement will constitute a valid, legal and binding obligation of Mr. Komppa.

12. <u>Governing Law</u>.
The validity, interpretation and construction of this Agreement shall be governed and construed in accordance with Delaware law.

13. <u>Counterparts</u>.
This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together will constitute one and the same instrument.

14. <u>Assignment</u>.
This Agreement may not be assigned by either Party without the prior written consent of the other Party, provided that Mr. Komppa may assign his rights and obligations under this Agreement to an affiliate controlled by him.

15. <u>Survival</u>.
    Notwithstanding any termination or expiration of this Agreement, all sections and exhibits hereof shall survive and shall continue to be valid and enforceable obligations in accordance with their terms, and such sections shall also survive (i) the completion of Mr. Komppa's engagement hereunder, (ii) any completion or termination of a transaction, or (iii) any decision by NexTech not to proceed with a transaction.

16. <u>Third Party Rights</u>.
    A person who is not a party to this Agreement has no right under the Contracts (Rights of Third Parties) Act 1999 to enforce or to enjoy the benefit of any term of this Agreement.

Please confirm that the foregoing correctly sets forth the Agreement between NexTech, its associates and Mr. Komppa.

Yours sincerely,

*[signature]*
M. Ryan Komppa

Agreed to and accepted this 12th day of November 2020

**NexTech Infrastructure Partners LLC**

*[signature]*
Howard B Horowitz
Its Manager

# Exhibit A
# Fee Schedule

The fees payable by NexTech to Mr. Komppa are as follows:

A.1 Success Based Fees.

NexTech shall pay to Mr. Komppa a success-based fee (the "**Success Fee**") in an amount equal to two percent (2.0%) of the first $200 million of equity committed, one and three quarters percent (1.75%) of the next $300 million committed and one and a half percent (1.5%) of the balance of funded investment amounts with respect to an investment in investment property, general partnership capital, entity investment, or any other equity investment approved by NexTech.

In the event that NexTech secures a firm capital commitment in the form of a blind pool fund, entity level, or other investments with a defined dollar amount, these Success Fees will be payable upon initial capital commitment as well as all subsequent commitments made by such Investor(s) in NexTech's investments. The Success Fees will be payable quarterly over six quarters from when such capital is committed to NexTech.

In the event that NexTech secures a programmatic joint venture ("**PJV**") commitment or similar investment without a commitment of a firm dollar amount, these Success Fees will be payable upon actual investment as well as all subsequent investments made by such Investor(s) in NexTech's investments. The Success Fees will be payable quarterly over two quarters from when such capital is committed to NexTech.

A.2 Retainer.

The Parties agree Mr. Komppa shall not be paid a retainer.

A.3 Co-investments, Subsequent Investment, and other Revenue Generating Investments.

For a period of up to 60 months after termination or completion of this contract or the final close of the initial investments, should NexTech and/or any of its investment vehicles, subsidiaries or associated companies, including any subsidiary or parent of NexTech or entity under common control with NexTech, enter into an add-on investment (co-investment, side car, or other vehicle) which will be invested in parallel to the initial investment relationship with an Investor introduced by Mr. Komppa that results in NexTech or any of its subsidiaries or associated companies or other investment vehicles earning fees, such as but not limited to base fees, management fees, acquisition or establishment fees. Mr. Komppa will be entitled to a Success Fee in the same proportion and on the same basis as set out in clause A.1 above (for the purpose of fee % calculation, such add-on investment is calculated as additive to the original and any prior investment for which a fee has been paid). For avoidance of doubt, this does not include a "Fund 2" or additional serial investment, but instead only includes investments which effectively increase the size of the initial investment vehicle during its investment period (Fund / Blind Pool) or during the period of the initial Fund's or programmatic relationship's (PJV) life.

A.4 Partnership Interest in Lieu of Success Fees.

In the event that the Parties reach an agreement as to Mr. Komppa's partnership in NexTech, Mr. Komppa will not be owed any success fees by the platform. Any fees due to RCX or any other Broker Dealer associated with Mr. Komppa as result of the transaction will be deducted from Mr. Komppa's promoted interest participation as a part of the partnership agreement.

**Exhibit B**
**Payment Terms & Broker Dealer Services**

B.1   All Fees are due and payable within 30 days of NexTech's receipt of the relevant invoice properly reflecting the terms and conditions set forth in this Agreement.

B.2   The General Partner recognizes that actions involving the solicitation of investors will require broker dealer involvement. Mr. Komppa will engage the services of RCX Capital Group, LLC ("**RCX**"), an independent broker dealer and member of FINRA and SIPC. Mr. Komppa is an agent ("**Registered Representatives**") of RCX and is supervised according to RCX's requirements. If RCX is retained, the first $100,000 of fees that are payable pursuant to section A.1 and A.2 in Exhibit A of this Agreement will be paid to RCX and should be directed to the following address:

RCX Capital Group, LLC
12707 High Bluff Drive, Suite 200
San Diego, CA 92130

B.3   In order to fulfill investigative functions mandated by FINRA, the Securities Exchange Commission and federal law, RCX may require access to NexTech's information, including due diligence materials, investment presentations and contractual documents. NexTech agrees to furnish RCX with the subscription / closing documents for entities sourced by the Registered Representatives. NexTech represents and warrants that, to its actual knowledge, the information provided to RCX will be true, accurate and complete. RCX does not assume responsibility for the accuracy or the completeness of the information provided by NexTech, and will have no obligation to conduct any independent evaluation of the financial affairs of NexTech.

B.4   NexTech agrees that RCX may rely upon and have the benefit of all indemnification, representations, warranties and agreements made by the General Partner in favor of Registered Representatives and RCX.

B.5   It is understood and agreed that RCX is an independent contractor, and nothing in this Agreement or the nature of RCX's services shall be deemed to create a fiduciary relationship between RCX and NexTech, NexTech's General Partner, or its members or shareholders. NexTech and its associates will not enter into a settlement that attributes any statement of wrong-doing, negligence or improper activity of any kind to RCX without first obtaining the prior written consent of RCX.

# Exhibit C
# Confidentiality and Non-Disclosure Agreement

This is a Non-Disclosure Agreement (this "**Agreement**"), effective as of the date stated below (the "**Effective Date**"), among NexTech Infrastructure Partners, LLC ("**NexTech**"), Howard Horowitz ("**HH**") and Ryan Komppa ("**RK**"). NexTech, HH and RK are sometimes referred to individually as a "**Party**" and collectively as the "**Parties**."

### Operative Terms

The Parties agree as follows:

1. These terms have the following definitions in this Agreement:

"**Confidential Information**" means all confidential and proprietary information of the Disclosing Party concerning or related to its business, operations, results of operations, assets or affairs, contacts and contact lists, any of which is identified as confidential or proprietary at the time of disclosure, or is otherwise of such a nature or disclosed under such circumstances that a reasonable person would understand the same to be confidential or proprietary to the Disclosing Party. Confidential Information also includes the fact that the Confidential Information has been made available to Recipient, the fact that the Parties are considering the Opportunity, the potential terms of the Opportunity, and the fact that discussions are taking place concerning the Opportunity.

"**Disclosing Party**" means RK when furnishing Confidential Information to NexTech or HH and NexTech and HH or their affiliates when furnishing Confidential Information to RK or RK's affiliates.

"**Opportunity**" means the Parties' activities as contemplated in. the Placement Agent Agreement .

"**Placement Agent Agreement**" means the Exclusive Private Placement Agreement dated as of [ ]. 2020 between RK and NexTech,

"**Recipient**" means the Party receiving Confidential Information.

"**Representatives**" means the agents, advisors, and representatives of a Party.

2. Each Party in its capacity as a Recipient agrees to use the Confidential Information provided by the other Party solely for the purpose of evaluating the Opportunity, and for no other purpose, and further agrees to keep confidential and not disclose to any third person any Confidential Information. Notwithstanding the foregoing, each Party may disclose such Confidential Information solely to those of its Representatives who (a) require such material for the purpose of evaluating the Opportunity on behalf of such Party, and (b) are informed by such Party of the confidential nature of the Confidential Information. Each Party shall take all reasonable actions necessary to cause its Representatives and affiliates who receive Confidential Information to comply with the terms of this Agreement as if they were a Recipient. Each Party shall be responsible for any disclosure of Confidential Information by its Representatives other than in accordance with the terms of this Agreement. Each Party acknowledges the confidential and proprietary nature of the Confidential Information provided by the other Party and acknowledges and agrees that it is acquiring no rights whatsoever in or to such Confidential Information. For avoidance of doubt, if the Parties do not consummate a transaction with respect to the Opportunity, neither Party nor its Representatives may use the Confidential Information for any purpose whatsoever.

3. Confidential Information does not include information that (a) is in the public domain through no fault of, or unauthorized disclosure by, the Recipient or its Representatives, (b) was already

known to the Recipient prior to disclosure by the Disclosing Party, (c) was disclosed to the Recipient by a third person, unless the Recipient knows that such third person is bound by a confidentiality agreement with the Disclosing Party or is otherwise restricted from providing such information by a contractual, legal or fiduciary duty owed to the Disclosing Party, or (d) is independently developed by the Recipient in a manner that has not used Confidential Information of the Disclosing Party. Additionally, notwithstanding any other provision of this Agreement, if the Recipient or any Representative of the Recipient is, at any time, legally compelled to disclose any Confidential Information, the Recipient will provide the Disclosing Party with prompt notice thereof so that the Disclosing Party (at its sole cost and expense) may seek an appropriate protective order or other appropriate relief, or waive compliance with the provisions of this Agreement. In the absence of a protective order or a waiver from the Disclosing Party, the Recipient or its Representative may comply with such legal requirement.

4. Each Party acknowledges and agrees that neither Party nor any of its Representatives makes any representation or warranty (express or implied) as to the accuracy or completeness of the Confidential Information, except for those express representations and warranties set forth in the Placement Agent Agreement or that may be made and set forth in any other definitive written agreement regarding the Opportunity, if any, that is entered into between any of the Parties.

5. If asked by a Party at any time, the Parties will, and will cause their respective controlled Representatives to, promptly return or destroy all Confidential Information received under this Agreement, and all copies, extracts and other objects or items in which such Confidential Information may be contained or embodied, and certify in writing that it has complied with this requirement. Notwithstanding the foregoing, each Recipient shall be permitted to retain one copy of all such written material solely to be kept in the files of its legal department (or otherwise in its archives), on a confidential basis, and in accordance with the terms of this Agreement.

6. Each Party acknowledges and agrees that this Agreement does not obligate the other Party to disclose any information, including any Confidential Information, negotiate, or enter into any agreement or relationship with the other Party, or make any offer to or accept any offer from the other Party.

7. The terms of this Agreement will remain in effect with respect to any particular Confidential Information for a period of two (2) years following the last date of receipt of any Confidential Information, provided that to the extent that Confidential Information constitutes confidential know-how and/or a trade secret of the Disclosing Party, the Receiving Party's obligations of confidentiality with respect to that Confidential Information shall continue until that Confidential Information lawfully enters the public domain or until the Receiving Party is expressly advised by the Disclosing Party in writing that it may be disclosed without breaching the terms of this Agreement.

8. Each Party acknowledges and agrees that any breach of this Agreement would cause irreparable harm to the Disclosing Party for which damages are not an adequate remedy, and that the
Disclosing Party shall therefore be entitled (without the posting of a bond or other security) to seek equitable relief in addition to all other remedies available at law.

9. This Agreement is governed by, and will be interpreted in accordance with, the laws of the State of Delaware.