**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **RYAN KOMPPA,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | **Case No. 1:25-cv-02009-MSN-WBP** |
| : | |
| **NEXTECH INFRASTRUCTURE PARTNERS** : | |
| **LLC, et. al.,** : | |
| : | |
| **Defendants.** : | |

_____

### DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendants NexTech Infrastructure Partners LLC ("NexTech"), Howard Horowitz ("Horowitz"), and Chris Flynn ("Flynn," and, collectively with NexTech and Horowitz, the "Defendants"), by counsel, and pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, hereby submit their Memorandum in Support of Motion to Dismiss, as follows.

### SUMMARY OF KOMPPA'S ALLEGATIONS

**I.    Introduction.**

NexTech is a Delaware limited liability company. Compl. ¶ 11. Horowitz and Flynn are NexTech members. *Id*. at ¶¶ 13-14. Plaintiff Ryan Komppa ("Komppa") alleges that he was introduced to Flynn in March 2020, and that Komppa discussed with Flynn the concept of "launching an industrial-scale data center platform." *Id*. at ¶ 26. Flynn, in May 2020, introduced Komppa to Horowitz, and the three "began exchanging ideas and decided to explore launching a data center platform venture together." *Id*. at ¶¶ 35, 37.

**II.    The NDA and the PPA.**

Sometime in the latter half of 2020, after further discussions about a data center venture, Komppa, Horowitz, and NexTech entered into a non-disclosure agreement (the "NDA"). Compl.

¶ 40.[1] The NDA is undated, unsigned, and, as a standalone document, not a contract, including because it states that it will be "effective as of the date stated below (the 'Effective Date')," but there is no "date stated below," such that it never became effective. *See* Compl. Exh. 1, Exh. C.

Insofar as the NDA is part of the dated and signed Exclusive Private Placement Agreement (the "PPA"), *see* Compl. Exh. 1, the NDA is to remain in effect "with respect to any particular confidential information for a period of two (2) years following the last date or receipt of any Confidential Information .... Compl. ¶ 43; *id.* at Exh. 1, Exh. C. The NDA, which states that it is governed by Delaware law, states that it "does not obligate [a] Party to .... enter into any agreement or relationship with the other Party, or make any offer to or accept any offer from the other Party."

NexTech and Komppa entered into the PPA on November 12, 2020. Compl. ¶ 50; *id.* at Exh. 1. The PPA contains three exhibits: Exhibit A (Fee Schedule), Exhibit B (Payment Terms & Broker Dealer Services), and Exhibit C (the NDA). *Id.* at Exh. 1. The PPA states that it "shall expire three hundred sixty (360) days" from November 12, 2020, i.e., November 7, 2021. Compl. ¶ 55; *id.* at Exh. 1, § 2. The PPA is governed by Delaware law. Compl. Exh. 1, § 12.[2]

---

[1]    Komppa confusingly alleges that, "[Jason] Reed, Horowitz, Flynn, and Komppa entered into a non-disclosure agreement," and that, "[t]he NDA became incorporated into the PPA, as Exhibit C," *see* Compl. ¶ 40, but the "Confidentiality and Non-Disclosure Agreement" attached as Exhibit C to the PPA (which is attached as Exhibit 1 to the Complaint) is between and among "NexTech Infrastructure Partners, LLC ('NexTech'), Howard Horowitz ('HH') and Ryan Komppa ('RK')," *see* Compl. Exh. 1, Exh. C, such that NexTech is a party to the NDA (which is not what Komppa alleges), but neither Reed nor Flynn are parties to the NDA (despite Komppa's allegations that they are parties to the NDA). *See, e.g., U.S. Golf Learning Institute, LLC v. Club Managers Ass'n of America*, 2011 WL 5599379, *3 (E.D.Va. Nov. 15, 2011) ("Should allegations in the complaint conflict with an exhibit attached pursuant to Fed.R.Civ.P. 10(c), the exhibit prevails. Accordingly, 'the Court need not accept as true conclusions or inferences from the complaint that are contradicted by the attached exhibits.'") (citations omitted). (The allegations about Jason Reed are irrelevant to the claims, and are among the numerous factual allegation cul de sacs into which the Complaint inexplicably detours the reader. *See, e.g.,* Compl. ¶¶ 34, 49, 67-69, 73-74.)

[2]    The PPA also notes that "[a] person who is not a party to this Agreement has no right under the Contracts (Rights of Third Parties) Act 1999 to enforce or to enjoy the benefit of any term of

The PPA states that Komppa shall provide certain services, including "[a]ssist[ing] with equity capital raising," and that, "subject to the provisions of this Agreement, NexTech shall pay to Mr. Komppa the fees as set out in the Fee Schedule attached to this Agreement as Exhibit A," which fees "shall be payable by NexTech in accordance with the payment terms set out in Exhibit B to this Agreement." Compl. Exh. 1, §§ 1, 5 (emphasis added). The Fee Schedule states:

> NexTech shall pay to Mr. Komppa a success-based fee (the "Success Fee") in an amount equal to two percent (2.0%) of the first $200 million of equity committed, one and three quarters percent (1.75%) of the next $300 million committed and one and a half percent (1.5%) of the balance of funded investment amounts with respect to an investment in investment property, general partnership capital, entity investment, or any other investment approved by NexTech.

Compl. Ex. 1, Exh. A, § A.1 (emphases added).

The Fee Schedule further states that, "In the event that NexTech secures a firm capital commitment in the form of a blind pool fund, entity level, or other investments with a defined dollar amount, these Success Fees will be payable upon initial capital commitment ...." *Id.* (emphases added). In turn, PPA Exhibit B states that, "All Fees are due and payable within 30 days of NexTech's receipt of the relevant invoice properly reflecting the terms and conditions set forth in this Agreement." Compl. Ex. 1, Exh. B, § B.1.

## III.    Komppa's Alleged Services.

Komppa alleges that between December 2020 and February 2021, he developed work product for the Defendants. Compl. ¶ 59. Komppa then, in February 2021, began working on acquiring investors for the potential data center project. *Id.* at ¶ 61. Komppa alleges that, "[a]s a result of Komppa's efforts," Gordon & Co., L.P. ("Angelo Gordon"), "made a $600 million equity

---

this Agreement." Compl. Exh. 1, § 16. The Contracts (Rights of Third Parties) Act 1999 is a United Kingdom law that is not applicable in Delaware or any other state.

commitment to NexTech," and that, "[i]n a term sheet issued on June 7, 2021, Angelo Gordon presented a $600 million equity commitment to NexTech." *Id.* at ¶¶ 70-71.

No, it did not. The June 7, 2021 Angelo Gordon term sheet is attached hereto as <u>Exhibit A</u> (said exhibit containing the transmittal email and Angelo Gordon's redline of NexTech's proposed term sheet), and the term sheet is far from an "equity commitment."[3] That is true both from its content, as further explained below, and because a "term sheet" is inherently <u>not</u> a commitment because a term sheet is, by its nature, not a contract, but, instead, a non-binding agreement to agree. *See, e.g.*, *Global Hub Logistics v. Tamerlane Global Services, Inc.*, 2013 WL 1332048, *1 (E.D.Va. March 29, 2013) ("Where a term sheet simply reflects the intention of the parties to agree on a final settlement at a later date, it is merely an 'agreement to agree' and not a binding contract."); *see also*, Exhibit A (Angelo Gordon proposing to add language in term sheet stating, "The terms of this Proposed Term Sheet shall be non-binding and NexTech nor [sic] Angelo Gordon Real Estate Inc. shall be bound to the other unless and until an agreement containing these and all other relevant terms has been fully negotiated and executed by the parties.").

---

[3]     The Court can review the term sheet without converting the Motion to Dismiss into a Motion for Summary Judgment. *See, e.g.*, *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D.Va. 1995) ("when a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss ... and the Court may consider the same without converting the motion to one for summary judgment") *citing Branch v. Tunnell,* 14 F.3d 449, 453–54 (9th Cir. 1994) ("documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered"); *see also*, *Witthohn v. Federal Ins. Co.*, 164 Fed. Appx. 395 (4th Cir. 2006) (in connection with a motion to dismiss, "a court may consider ... documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed.") (*citing Phillips v. LCI Int'l, Inc.,* 190 F.3d 609, 618 (4th Cir. 1999)). Horowitz's declaration under penalty of perjury that Exhibit A is a true and accurate copy of the transmittal email transmitting the Angelo Gordon term sheet dated June 7, 2021, and the Angelo Gordon redline of the term sheet attached to said email, is included below.

As noted in Angelo Gordon's June 7, 2021 transmittal email, the document transmitted to Komppa was "our mark up to the term sheet," i.e., a counteroffer to an earlier NexTech proposal. Angelo Gordon's redline of the term sheet shows any number of unsettled, but very much material, terms, including that (1) the equity contribution amount is not fixed (with $600,000,000 being an "up to" potential, but not "committed"), (2) the identity of the entity contributing the equity is not stated (instead reference being made to an "affiliate of Angelo Gordon Real Estate Inc."), (3) the equity would only be contributed alongside "NexTech Investment Company" (an entity that does not exist) "on a pro rata basis," (4) the internal rate of return ("IRR") is still being negotiated, (5) Angelo Gordon wanted the "Principals" (presumably the members) of NexTech to contribute at least $10,000,000 of the Principals' _personal_ funds, (6) Angelo Gordon sought to change the timing of NexTech's investment, such that NexTech would have to invest $6,500,000 through the second tranche (as opposed to NexTech's proposal of $4,000,000), (7) Angelo Gordon sought to materially pare back NexTech's leasing fee, which would be a significant NexTech profit center, (8) Angelo Gordon sought to limit NexTech's ability to collect a property management fee, and (9) Angelo Gordon sought to materially increase the interest rate on a proposed $5,000,000 loan to NexTech.

Accordingly, the June 7, 2021 Angelo Gordon term sheet, which Komppa (understandably) chose not to attach to the Complaint, belies Komppa's allegation that, "In a term sheet issued on June 7, 2021, Angelo Gordon presented a $600 million equity commitment to NexTech," Compl. ¶ 71, and calls into question what, exactly, Komppa means when he uses the word "commitment."[4]

---

[4]    _Cf._, Lewis Carroll, _Through the Looking-Glass, and What Alice Found There_ (1871) ("'When _I_ use a word,' Humpty Dumpty said ..., 'it means just what I choose it to mean—neither more nor less.'") (emphasis added).

The Angelo Gordon "term sheet" was not a final, agreed-upon term sheet (which, again, would have been non-binding even if it had ultimately been negotiated into a final form). Instead, it was a heavily-edited counterproposal, and NexTech shortly thereafter rejected Angelo Gordon's proposed terms, *see* Compl. ¶¶ 84-86, such that no party ever committed to do anything.

Komppa alleges that, after deciding not to finalize a non-binding term sheet with Angelo Gordon, NexTech began discussions with MSD Capital, L.P. ("MSD"), about a potential data center project. *Id*. at ¶ 89. Komppa and the Defendants met with MSD in mid-July 2021, *id.* at ¶ 91, and "MSD conveyed its $600 million equity investment offer to NexTech by a term sheet, dated July 21, 2021." *Id.* at ¶ 93. The "term sheet dated July 21, 2021," is attached hereto as Exhibit B (said exhibit containing the July 22, 2021 transmittal email from MSD to Komppa and the two attachments thereto, which are MSD's July 21, 2021 term sheet in redline format showing MSD's revisions to the prior NexTech iteration of the term sheet and MSD's term sheet in clean format). Exhibit B is a true and accurate copy of the transmittal email and MSD term sheet. *See* Declaration.

As noted in MSD's July 22, 2021 transmittal email, the document transmitted to Komppa was "our revised term sheet and a redline vs. your most recent draft," i.e., a counteroffer to an earlier NexTech proposal. MSD's redline of the term sheet shows any number of unsettled, but very much material, terms, including that MSD (1) sought to reduce NexTech's asset management fee, (2) sought to delete a term whereby NexTech sought to create an opportunity to strip MSD of its right of first refusal on deals, (3) introduced a brand new and material loan proposal, (4) proposed gaining an initial 15% equity in NexTech, with the potential of increasing its ownership percentage based on loans made, (5) simply deleted the "Ownership & Economic Participation" section of the term sheet, which addressed MSD's minimum investment, and (6) questioned the terms regarding the ability of the parties to leverage the investment for purposes of a loan.

Again, NexTech did not come to terms with MSD and decided not to move forward with MSD as an investor. Compl. ¶¶ 97–98.

Komppa also alleges, in a conclusory manner and with no supporting factual allegations whatsoever, that Townsend Group ("Townsend") committed to an "add-on" commitment. Compl. ¶¶ 4, 99. There is no allegation of when such "add-on" commitment was made or would materialize, the terms of such commitment, the underlying investment to which Townsend would add-on, why Komppa construes any Townsend proposal as a commitment, or any other factual hallmark of an actual commitment. *See, e.g.*, *Grimes v. Department of Defense*, 2025 WL 1334054, *4 (E.D.Va. May 7, 2025) (on a 12(b)(6) motion, "[t]he Court need not accept ... conclusory allegations.").

IV.    **Wood Dale**.

Komppa alleges that, "in or about late June to July 2021, Horowitz began to consider having Kestrel Ventures invest in a data center platform project centered in Wood Dale, Illinois, a suburb of Chicago, utilizing equity from MSD to do so." Compl. ¶ 95.[5] Horowitz then, according to Komppa, indicated an unwillingness to "take the entrepreneurial risk and effort involved in ... NexTech," *id.* at ¶ 107, and the Wood Dale project never came to fruition through NexTech, Kestrel Ventures, or any other entity or person. *Id.* at ¶¶ 117-122.

V.    **The Alleged Breach of the PPA and NDA.**

Komppa, despite not securing any equity commitments, capital commitments, or funded investments, issued an invoice to PPA. Compl. ¶ 133. Komppa appears to allege that he is due approximately $21,700,000, *see id.* at ¶ 132, but it is not clear that the alleged invoiced stated this

---

[5]    Komppa alleges that Kestrel Venture Partners, L.P., is a Delaware limited partnership of which Horowitz is the general partner, and Kestrel Ventures LLC is a Delaware limited liability company of which Horowitz is the managing member. Compl. ¶¶ 15-16, 18-19. Komppa refers to said entities collectively as the "Kestrel Ventures." *Id.* at ¶ 21.

(or any other) amount, and the invoice is not attached to the Complaint. In any event, Komppa alleges that "NexTech ... failed to pay Komppa's invoice ...." *Id.* at ¶ 134.

## VI.    The PPA Expires.

The parties did not extend the PPA, and it expired on November 7, 2021. *Id.* at ¶ 116.

## PROCEDURAL BACKGROUND

Komppa filed his Complaint on November 10, 2025. NexTech was served with the Summons and Complaint on Thursday, November 13, 2025, and Flynn was served with the Summons and Complaint on Friday, November 14, 2025. *See* Docket 7.[6] Horowitz has not yet been served.

Komppa's Complaint includes seven causes of action: (1) Breach of Contract - Breach of PPA's Success Fee; (2) Breach of Contract - Breach of PPA's Non-Circumvention Terms; (3) Breach of Contract - Breach of PPA's NDA; (4) Breach of Duty of Good Faith and Fair Dealing; (5) Quantum Meruit; (6) Unjust Enrichment; and (7) Tortious Interference with Contract. None of the causes of actions are pled in the alternative.

## LAW AND ARGUMENT

The standard of review for a Rule 12(b)(6) motion is well known:

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. In deciding such a motion, a court must first be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." A court must take "the material allegations of the complaint" as admitted and liberally construe the complaint in favor of a plaintiff. While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." Indeed, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level."

In ... *Ashcroft v. Iqbal*, 129 S. Ct 1937 (2009), the Supreme Court expanded upon [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)] by articulating a two-pronged analytical approach to be followed in any Rule 12(b)(6) test.

---

[6]    Docket 7 also indicates that the two Kestrel entities were served on November 13, 2025.

First, a court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the presumption of truth. "[B]are assertions" that amount to nothing more than a "formulaic recitation of the elements" do not suffice.

Second, assuming the veracity of "well-pleaded factual allegations" a court must conduct a "context-specific" analysis drawing on "its judicial experience and common sense" and determine whether the factual allegations "plausibly suggest an entitlement to relief." The plausibility standard requires more than a showing of "a sheer possibility that a defendant has acted unlawfully."

*Gerdak v. Doe, et al.*, 2010 U.S. Dist. LEXIS 107326, *4-7 (E.D.Va. 2010) (citations omitted).

"[W]hile the court must 'accept the pleader's description of what happened' and 'any conclusions that can be reasonably drawn therefrom,' the court 'need not accept conclusory allegations encompassing the legal effects of the pleaded facts ....'" *Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 814 (E.D. Va. 2016) (citations omitted). Further, the court is not required to accept as true a legal conclusion unsupported by factual allegations. *Id.*

## I.    Counts I, II, and III (Breach of Contract) Fail as a Matter of Law.

Komppa's breach of contract counts fail to state claims. As a threshold matter, Komppa fails to sufficiently plead that he obtained an equity commitment, capital commitment, or funded investment, as the "commitments" alleged in the Complaint were not commitments, but were, instead, mid-stream, heavily-qualified, high-level, and not-agreed-upon proposals set forth in term sheets that, even if accepted by NexTech, would still not have constituted binding commitments. Further, any alleged breach of contract claim arising from the PPA, whether the breach involved the success fee, the non-circumvention terms, or the NDA, is barred by Delaware's three-year statute of limitations on breach of contract claims. This latter issue will be addressed first.

Further, Counts I and II fail as to Horowitz because he is not a party to the PPA, and the Complaint completely fails to allege any factual basis upon which NexTech's corporate veil can be pierced in order to reach Horowitz.

9

### A.    Counts I, II, and III are Barred by the Statute of Limitations.

The PPA and the NDA are governed by Delaware law. *See* PPA § 12, NDA § 9. In order to state a breach of contract claim under Delaware law, a plaintiff must plead (1) the existence of a contract, (2) the breach of a contractual obligation, and (3) a resultant damage. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). Damage is an essential element of a breach of contract claim. *See In re Cendant Corp. Sec. Litig.*, 181 F. App'x 206, 210 (3d Cir. 2006).

Komppa, in Counts I, II, and III, alleges that NexTech and Horowitz breached three provisions of the PPA: (1) the Success Fee, (2) the Non-Circumvention Terms, and (3) the NDA. Compl. ¶¶ 127–48. "Under Delaware law, a three-year statute of limitations applies to claims for breach of contract ...." *Fike v. Ruger*, 754 A.2d 254, 260 (Del. Ch. 1999), *aff'd*, 752 A.2d 112 (Del. 2000) (citing 10 Del. C. § 8106). "A cause of action accrues at the moment of the wrongful act, even if the plaintiff is ignorant of the wrong." *Id.* (citations omitted).

### 1.    Count I (Breach of the PPA's Success Fee).

Komppa alleges that he "secured" alleged "equity commitment[s]" from Angelo Gordon and MSD "[d]uring the term of the PPA," and also "secured an add-on commitment[]," from Townsend, again "[d]uring the term of the PPA." Compl. ¶¶ 129–31. Komppa further alleges that he issued an invoice to NexTech, but it was not paid. Compl. ¶ 134; *but see* Compl. Exh. 1, Exh. A, § A.1 ("In the event that NexTech secures a firm capital commitment ... with a defined dollar amount, these Success Fees will be payable <u>upon</u> initial capital commitment ....") (emphasis added).

The term of the PPA was the period between November 12, 2020 and November 7, 2021. Compl. ¶¶ 50, 116. NexTech and Horowitz do not agree that it was a breach not to pay Komppa a fee, including because no equity commitments were made, but, even if a breach occurred, Komppa was required to bring this action within three years of Defendants' failure to pay the alleged fee

due to Komppa. *See Fike*, 754 A.2d at 260; 10 Del. C. § 8106. Komppa did not. Instead, Komppa

filed suit on November 10, 2025, almost five years after the parties entered into the PPA, five years

after he began rendering his services, over four years after he allegedly secured "commitments" in

2021, and over four years after the PPA expired. Accordingly, Count I must be dismissed.

### 2.    Count II (Breach of the PPA's Non-Circumvention Terms).

Komppa next alleges that NexTech and Horowitz breached the "Non-Circumvention"

section of the PPA when NexTech allegedly "circumvented and diverted Komppa's efforts and

services rendered pursuant to the PPA[.]" Compl. ¶¶ 140–41. Komppa asserts that he provided

NexTech, Horowitz, and Flynn proprietary and confidential work product from December 2020 to

February 2021, *id.* at ¶ 59, and that NexTech used, exploited, and diverted the work product to

Kestrel Ventures, Horowitz, and Flynn. *Id.* at ¶ 140. The alleged misuse occurred in or about July

2021, as Komppa alleges that NexTech and Horowitz allegedly declined the "commitment" from

MSD in July 2021 so that they could, instead, immediately turn to involving MSD in the potential

funding of the Wood Dale project, which would be pursued via the Kestral Ventures entities. *Id.*

at ¶¶ 93-98. The Wood Dale project did not come to fruition. *Id.* at ¶¶ 117-122.

Any and all alleged breaches of the Non-Circumvention provision of the PPA occurred in

2021; accordingly, the breach of contract claim is barred pursuant to Delaware's three-year statute

of limitations on breach of contract claims, and Count II must be dismissed.

### 3.    Count III (Breach of the PPA's NDA).

The exact same factual allegations asserted in support of Count II are asserted in support of

Count III. The alleged breach of the NDA's terms regarding disclosure of confidential information,

if such breach occurred, occurred, per Komppa's allegations, in 2021. In turn, a breach of contract

claim is barred by Delaware's three-year statute of limitations, and Count III must be dismissed.

**B.      Count I Fails to State a Claim for Breach of Contract.**

Aside from Count I being barred by the statute of limitations, the term sheets referenced, but not provided, by Komppa were draft, non-binding documents that did not entitle Komppa to payment pursuant to the PPA.

"A complaint alleging breach of contract must show the existence of a contract, allege a breach of that contract, and damages resulting from the alleged breach." *Boissonneault v. Delaware Podiatric Med.*, P.A., No. CV N24C-08-300 DJB, 2024 WL 5055538, at *3 (Del. Super. Ct. Dec. 9, 2024) (citation omitted). Plaintiff sufficiently pleads the first element because the PPA was a contract between Komppa and NexTech, but no breach is sufficiently alleged.

As noted above, the PPA's Fee Schedule states:

> NexTech shall pay to Mr. Komppa a success-based fee (the "Success Fee") in an amount equal to two percent (2.0%) of the first $200 million of <u>equity committed</u>, one and three quarters percent (1.75%) of the next $300 million <u>committed</u> and one and a half percent (1.5%) of the balance of <u>funded</u> investment amounts with respect to an investment in investment property, general partnership capital, entity investment, or any other investment <u>approved by NexTech</u>.

Compl. Ex. 1, Exh. A, § A.1 (emphases added).

<u>First</u>, as explained above, neither the Angelo Gordon nor the MSD "commitments" were actually commitments; instead, they were proposals containing a number of material reservations, qualifications, and contingencies that in no common understanding of the word "commitment" can be deemed commitments. Conceptually, it is worth asking: If either Angelo Gordon or MSD had chosen not to invest funds, could either of them have been successfully sued by NexTech for such failure? Of course not, because there is no contract, as there is neither a meeting of the minds nor the requisite material terms upon which a contract claim could be asserted. There was, in short, no "commitment" from either entity, and, thus, the "Success Fee" was never due to Komppa.

Regarding Townsend, Komppa alleges so little about Townsend that he plainly fails to allege a "commitment" from Townsend. Komppa alleges that he "secured an add-on commitment from Townsend," that he "secured ... an add-on commitment from Townsend," that "Townsend committed to an 'add-on' investment of $150 million," that "Komppa secured an add-on commitments [sic] Townsend [sic] valued at $150 million," and that the Townsend "commitment" "assume[d] the initial ~$500m would be provided by MSD or Angelo Gordon." Compl. ¶¶ 4, 62, 99, 131, 132. That is it. Those allegations are so devoid of factual support that they are mere conclusions that the Court need not accept. *See, e.g., Gerdak v. Doe, et al.*, 2010 U.S. Dist. LEXIS 107326, *4–7 (E.D.Va. 2010) ("the legal framework of the complaint must be supported by factual allegations that 'raise a right to relief above the speculative level.'") (citations omitted). Further, Komppa alleges that the Townsend "commitment" was necessarily contingent on MSD or Angelo Gordon investing funds, and Komppa did not secure, and certainly did not obtain, such funding.

<u>Second</u>, the alleged term sheets with MSD and Angelo Gordon were never, as explained at length above, finalized, and, in any event, even if they had been finalized, term sheets are inherently non-binding and cannot constitute a "commitment," because they are mere agreements to agree, i.e., the parties necessarily contemplate a subsequent, actually-binding agreement that will constitute the "commitment." *See Global Hub Logistics*, 2013 WL 1332048, *1.

### C.    Any Damages Requested by Komppa in Counts I, II, and III are Speculative.

In Count I, Komppa provides a table purporting to summarize his "earned fees" from the Angelo Gordon, MSD, and Townsend "commitments." Compl. ¶ 132. Counts I, II, and III also include a demand for "damages from NexTech in an amount to be proved at trial." Compl. ¶¶ 137, 143, 148. "'The law does not require certainty in the award of damages where a wrong has been proven and injury established. ... Speculation is an insufficient basis, however.'" *Lake Treasure*

*Holdings, Ltd. v. Foundry Hill GP LLC*, No. CIV.A. 6546-VCL, 2014 WL 5192179, at *12 (Del.

Ch. Oct. 10, 2014) (quoting *Del. Exp. Shuttle, Inc. v. Older*, 2002 WL 31458243, at *15 (Del. Ch.

Oct. 23, 2002)). Here, Komppa posits that he is entitled to damages simply because investors he

identified entertain the *idea* of investing, though they may not ultimately invest, or may not agree

to invest a fixed sum. The law does not support Komppa's position, as it is obviously speculative

as to whether Angelo Gordon, MSD, and/or Townsend ultimately would have invested.

    **D.**    **Counts I, II, and III Must be Dismissed as to Horowitz.**

    As discussed above, the NDA is not signed and was never, as a standalone document, a

contract, because it contemplates being "effective" on a date set forth in the NDA, but no date is

set forth in the NDA. Thus, the NDA is only enforceable insofar as it is an exhibit to the PPA, and

the PPA is between NexTech and Komppa. Neither Horowitz nor Flynn are parties to the PPA.

    Counts I, II, and III allege breach of the PPA, and Komppa asserts that both NexTech <u>and</u>

Horowitz, personally, are liable for the breaches of the PPA. In short, Komppa seeks to pierce the

corporate veil of NexTech to get to Horowitz, but Komppa alleges no facts warranting such relief.

> "Veil piercing is a tough thing to plead and a tougher thing to get, and for
> good reason." "Delaware public policy does not lightly disregard the
> separate" corporate form. "This Court will disregard the corporate form
> only in the 'exceptional case.'" When determining whether to pierce the
> corporate veil, the Court considers "(1) whether the company was
> adequately capitalized for the undertaking; (2) whether the company was
> solvent; (3) whether corporate formalities were observed; (4) whether the
> dominant shareholder siphoned company funds; and (5) whether, in general,
> the company simply functioned as a façade for the dominant shareholder."
> No single factor is determinative. The central inquiry is whether a defendant
> abused or manipulated "the corporate form." In other words, "the
> corporation must be a sham and exist for no other purpose than as a vehicle
> for fraud." Even then, the plaintiff must plead "an overall element of
> injustice or unfairness."
>
> Undercapitalization or insolvency alone is not enough to warrant "piercing
> of the corporate veil."

14

*PXP Producing Co. LLC v. MitEnergy Upstream LLC*, 342 A.3d 402, 416-17 (Del. Ch. 2025) (citations omitted).

Komppa uniformly fails to allege any basis upon which the corporate veil may be pierced to get to Horowitz personally. There are no <u>well-pled</u> allegations of NexTech's capitalization, solvency, corporate formalities, or loss of funds due to siphoning, *see* Compl. ¶¶ 125-26, and Komppa, instead of alleging that NexTech "exist[ed] for no other purpose than as a vehicle for fraud," alleges that NexTech was, in fact, purposeful and directed towards the potential of investing in data centers. Accordingly, Counts I, II, and III must be dismissed as to Horowitz.

## II.    Count V (Breach of Duty of Good Faith and Fair Dealing) Fails to State a Claim and is Barred by the Statute of Limitations.

Komppa, in what he labels his "Fifth Cause of Action," but which is actually the fourth count in the Complaint, alleges that "NexTech and Horowitz breached the implied duty of good faith and fair dealing implied by the PPA and the PPA's NDA." Compl. ¶ 153. As explained below, the PPA contemplates all of the alleged actions and potential inactions Komppa raises in the Complaint as the purported bases for his claims. Thus, the implied duty of good faith and fair dealing is inapplicable. Even if Komppa could allege a viable action for a breach of the duty of good faith and fair dealing, the action is barred by the three-year statute of limitations.

### A.    The Breach of Duty of Good Faith and Fair Dealing Claim Fails.

Despite the detailed underlying contract (the PPA), Komppa alleges that NexTech and Horowitz breached the implied duty of good faith and fair dealing implied by the PPA and the NDA. Compl. ¶¶ 149–54.  It is difficult to overstate Virginia courts' hostility to the concept that written contracts specifying the terms of two parties' obligations to each other also carry with them

nebulous, unwritten duties of good faith and fair dealing.[7] Delaware courts, while recognizing a

cause of action for a breach of the duty of good faith and fair dealing, construe the claim narrowly:

> [T]he implied covenant is "a <u>limited and extraordinary</u> legal remedy" and the
> existing contract terms control. The implied covenant cannot be used to rewrite an
> agreement or "rebalanc[e] economic interests after events that could have been
> anticipated, but were not, that later adversely affected one party to [the] contract."
> "But when the contract is 'truly silent' about the issue, and the express terms of the
> partnership agreement naturally imply certain corresponding conditions, [parties]
> are entitled to have those terms enforced according to the[ir] reasonable
> expectations ... at the time of contracting."
>
> Because a claim for breach of the implied covenant is contractual, the elements are
> those of a breach of contract claim. [A Plaintiff] must prove "a specific implied
> contractual obligation, a breach of that obligation by [a Defendant], and resulting
> damage to [Plaintiff]."

---

[7]    *See, e.g., Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 385 (1997) ("when
parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing
is inapplicable to those rights … Generally, such a covenant cannot be the vehicle for rewriting an
unambiguous contract in order to create duties that do not otherwise exist."); *JPMCCM 2010-C1 Aquia
Office LLC v. Mosaic Aquia Owner, LLC*, 101 Va. Cir. 34, *4 (Stafford Cir. Ct. Jan. 15, 2019)
(demurrer to implied covenant count sustained because "the complaint is clear that the parties'
relationship was governed by a valid and binding written contract."); *So. Bank and Tr. Co. v.
Woodhouse*, 92 Va. Cir. 402, *6 (City of Norfolk Cir. Ct. May 26, 2016) ("Virginia does not recognize
an independent action for breach of the implied covenant in cases that are not governed by the UCC.");
*Emanuel v. Bank of Am., N.A.*, 89 Va. Cir. 272, 273 (City of Richmond Cir. Ct. Oct. 31, 2014) ("[T]here
is no Virginia authority that a cause of action of good faith and fair dealing exists."); *Hershberger v.
Bank of Am., N.A.*, 92 Va. Cir. 470, *2 (Caroline Cty. Cir. Ct. Sep. 13, 2013) ("a separate action for
Breach of Implied Covenant of [G]ood Faith and Fair Dealing does not exist"); *Waters v. CitiMortgage*,
92 Va. Cir. 460, *6 (Chesterfield Cty. Cir. Ct. Jan. 14, 2013) (demurrer sustained because "a contract
existed between the parties ... which governed the parties' duties and obligations. As such, an implied
covenant of good faith and fair dealing is inapplicable ...."); *Allaun v. Scott*, 59 Va. Cir. 461, 465 (City
of Norfolk Cir. Ct. Sep. 19, 2002) ("There is no support for ... a duty [of good faith and fair dealing],
nor an independent tort based on its breach, at common law."); *Will & Cosby Assocs. v. Salomonsky*,
48 Va. Cir. 500, 504–05 (City of Richmond Cir. Ct. Apr. 22, 1999) ("The court also holds that since
all of these parties had contracts with each other, no implied contract existed."); *Spiller v. James River
Corp.*, 32 Va. Cir. 300, 307 (City of Richmond Cir. Ct. Dec. 23, 1993) ("Virginia law does not
recognize a claim for breach of a covenant of good faith and fair dealing."); *see also, Katti v. Moore,
et al.*, 2006 U.S. Dist. LEXIS 85486, *10 (E.D.Va. 2006) ("Under Virginia law, once two parties agree
to a valid and binding contract, one party may not use any implied duty to modify or override the
contract."); S*need v. Am. Bank Stationary Co., Div. of ABS Corp.*, 764 F. Supp. 65, 67 (W.D.Va. 1991)
("Plaintiff ... also alleges breach of an implied covenant of good faith and fair dealing. However, <u>this
Court specifically has rejected such a claim in the past, because the cause of action is not recognized
under Virginia law</u>.") (emphasis added).

16

*Whitestone REIT Operating P'ship, L.P. v. Pillarstone Cap. REIT*, No. 2022-0607-LWW, 2024 WL 274228, at *7 (Del. Ch. Jan. 25, 2024) (citations omitted) (emphasis added).

Komppa alleges that "[i]n violation of his duty of good faith and fair dealing, Horowitz decided to step back from NexTech while continuing to pursue the Wood Dale deal, while representing that the NexTech team members – *i.e.* Komppa and Flynn – would be compensated." Compl. ¶ 119. Komppa also vaguely alleges that both the PPA and the NDA include "an implied duty of good faith and fair dealing [] which requires NexTech and Horowitz not to do anything that would destroy or injure the right of Komppa to receive the benefits of the [PPA and NDA]." Compl. ¶¶ 150–51. Komppa's allegations do not state a claim for breach of the implied duty of good faith and fair dealing because the PPA is not silent as to the alleged issues.

Regarding the alleged Wood Dale project, PPA Section 7 includes "non-circumvention" terms explicitly barring the parties from circumventing the purpose of the project. That section prohibits either party from "(i) taking advantage of a Business Opportunity introduced by the other Party, and/or (ii) circumventing the Party that introduced the Business Opportunity in such a manner that would operate to avoid fees and/or other remuneration being paid to the Party that introduced the Business Opportunity." Compl., Ex. 1, § 7. Thus, the implied covenant of good faith and fair dealing is inapplicable, as the allegedly bad faith and unfair acts are matters specifically addressed in the PPA.

Regarding the allegation that "NexTech and Horowitz [could] not ... do anything that would destroy or injure the right of Komppa to receive the benefits of the [PPA and NDA]," the "benefits" of the PPA and NDA would be the Success Fee (the terms of which are explicitly stated in the PPA), and, as discussed above, Komppa did not obtain any "commitments" warranting payment of the Success Fee. Further, the law requires that Komppa allege a "a specific implied

contractual obligation," and the generalized allegation that Defendants cannot "do anything" to "destroy or injure" Komppa's "benefits" is not an allegation of a specific implied contractual duty. Accordingly, the Breach of Good Faith and Fair Dealing claim must be dismissed.

**B.    Komppa Was Required to Bring Count IV Within Three Years.**

Count IV is also subject to a three-year statute of limitations and is therefore barred. The alleged implied duties arose from a Delaware contract, and actions based on a promise are subject to 10 Del. C. § 8106, "which provides a three-year limitations period" for contract claims. *Lankford v. Scala*, No. CIV. A. 94C-04-023, 1995 WL 156220, at *2 (Del. Super. Ct. Feb. 28, 1995); *see also Lavender v. Koenig,* No. CV K13C-08-024 RBY, 2017 WL 443696, at *3 (Del. Super. Ct. Feb. 1, 2017), *aff'd*, 171 A.3d 1117 (Del. 2017) (finding that the statute of limitations barred plaintiff's claims for a breach of the implied covenant of good faith and fair dealing claim because the action accrued more than three years before plaintiff filed suit).

As previously stated, Komppa alleges Defendants violated the duty of good faith and fair dealing when Defendants pursued the Wood Dale deal and generally interfered with Komppa's right to receive the benefits of the PPA and NDA. Compl. ¶¶ 119, 150–51. The alleged breaches occurred in 2021, such that Komppa was required to file suit by 2024. *See Lankford v. Scala*, No. CIV. A. 94C-04-023, 1995 WL 156220, at *2 (Del. Super. Ct. Feb. 28, 1995). Komppa filed suit in November 2025. Accordingly, Count IV is barred by Delaware's statute of limitations.

**C.    Count V must be dismissed as to Horowitz**.

Komppa alleges that Horowitz, individually, breached the implied duty of good faith and fair dealing arising from the PPA, but Horowitz is not a party to the PPA, and, as explained above, Komppa completely fails to allege a basis upon which veil-piercing is warranted. Accordingly, Count V must be dismissed as to Horowitz.

18

III.    **Counts VI (Quantum Meruit) and VII (Unjust Enrichment) Fail to State a Claim.**

Komppa, perhaps recognizing the insufficiency of the breach of contract claims, alleges a quantum meruit claim (Count VI) against Horowitz and Flynn and an unjust enrichment claim (Count VII) against NexTech, Horowitz, and Flynn. These claims fail, as explained below.

A.    **Count VI (Quantum Meruit) Fails to State a Claim.**

To properly plead quantum meruit, Plaintiff must show that services were performed under circumstances that should have put Defendant on notice that the performing party expected to receive a benefit in return. Because quantum meruit is a quasi-contract theory, such a claim will only succeed in the absence of an express contract, [and] "if it is determined that the relationship of the parties and the services involved in this claim are the subject of an express contract, the terms of that contract control and there is no occasion to pursue ... quantum meruit."

*Boissonneault v. Delaware Podiatric Med., P.A.*, 2024 WL 5055538, *4 (Del. Super. Ct. Dec. 9, 2024) (citations omitted); *cf. Mongold v. Woods*, 278 Va. 196, 203 (2009) ("Quantum meruit recovery ... is based upon an implied contract to pay the reasonable value of services rendered .... 'Where service is performed by one, at the instance and request of another, and ... nothing is said between the parties as to compensation for such service, the law implies a contract, that the party who performs the service shall be paid a reasonable compensation therefor.'") (citation omitted).

In his Complaint, Komppa alleges that: Komppa provided benefits to Horowitz and Flynn; Horowitz and Flynn accepted and retained the benefits; and Komppa reasonably expected payment from Defendants for the benefits provided by Komppa. Compl. ¶¶ 155–59. First, those allegations are not well-pled, as there is nothing pled in the Complaint distinguishing the alleged benefits that Komppa claims he provided to NexTech from the alleged benefits Komppa alleges in a conclusory manner to have, instead, provided to Horowitz and Flynn. Further, Komppa alleges that the alleged information he provided (which appears, in sum, to be identifying Angelo Gordon and MSD as potential investors) was provided to NexTech, and only subsequently (and innocuously) "utilized"

by Horowitz, such that, at the time the alleged benefit was provided to NexTech, there would have been no expectation on the part of Horowitz or Flynn that they, personally, would have a personal obligation to compensate Komppa for the alleged benefit.

Second, the circumstances of the provision of the alleged benefit was Komppa's alleged services pursuant to the PPA, and the only benefit that Horowitz or Flynn could reasonably have foreseen Komppa seeking was payment in keeping with the PPA's terms, and, as explained above, Komppa did not meet the terms of the PPA to warrant the "benefit" (i.e., the Success Fee).

Third, while Horowitz and Flynn are not parties to the PPA, as just noted, the alleged benefits were provided in connection with services allegedly rendered pursuant to the PPA, and the law is clear that no quasi-contract claim can exist where the alleged services are already the subject of an express contract. *See Boissonneault v. Delaware Podiatric Med., P.A.*, No. CV N24C-08-300 DJB, 2024 WL 5055538, at *4 (Del. Super. Ct. Dec. 9, 2024) (citations omitted).

Finally, the quantum meruit claim, like all the other allegations in the Complaint, arise from alleged services rendered in 2021, and are, therefore, barred by the statute of limitations. *See, e.g.*, *Alban Tractor Co., Inc. v. Land Preparation Specialists, Inc.*, 2001 WL 914008, *2 (Del. Sup. Ct., May 18, 2001) ("The statute of limitations for a quantum meruit claim is three years from the accrual of the cause of action."); *cf*. Va. Code § 8.01-248 (two year statute of limitations).

**B.    Count VII (Unjust Enrichment) Fails to State a Claim.**

Komppa also fails to successfully plead an unjust enrichment claim. "The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." *Jackson Nat. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. Ct. 1999); *cf. Schmidt v. Household Finance Corp., II*, 276 Va. 108, 116 (2008) ("To state a cause of action

20

for unjust enrichment, [plaintiff] had to allege that: (1) he conferred a benefit on [defendant]; (2) [defendant] knew of the benefit and should reasonably have expected to repay [plaintiff]; and (3) [defendant] accepted or retained the benefit without paying for its value."); *see Nedrich v. Jones*, 245 Va. 465, 476 (1993) ( "One may not recover under [unjust enrichment] simply by showing a benefit to the defendant, without adducing other facts to raise an implication that the defendant promised to pay the plaintiff for such benefit.").

An unjust enrichment claim cannot be stated where an express contract exists between the parties. *Kuroda v. SPJS Holdings, L.L.C.,* 971 A.2d 872, 891 (Del. Ch. 2009) ("A claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim."); *CGI Fed. Inc. v. FCi Fed., Inc*., 295 Va. 506, 519 (2018) (citation omitted) (existence of an express contract covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment). "When the complaint alleges an express, enforceable contract that controls the parties' relationship ... a claim for unjust enrichment will be dismissed." *Kuroda*, 971 A.2d 872, 891 (Del. Ch. 2009) (quoting *Bakerman v. Sidney Frank Importing Co.*, 2006 WL 3927242, at * 18 (Del. Ch. Oct. 10, 2006) (revised Oct. 16, 2006)).

The set of facts upon which Komppa predicates the unjust enrichment claim is the same set of facts underlying the quantum meruit claim. As explained above, the services were rendered to NexTech, and there is no factual allegation in the Complaint (and certainly no well-pled factual allegation) that any of Komppa, Horowitz, or Flynn had an expectation that Komppa would be compensated by Horowitz or Flynn. Further, neither Horowitz nor Flynn obtained a benefit; Komppa does not allege that either Horowitz or Flynn used Komppa's efforts for any monetary gain whatsoever, and, in fact, the only alleged non-NexTech project, Wood Dale, is not alleged to have been anything more than a half-hearted concept that ended in failure. Compl. ¶¶ 117-122.

Further, the existence of the express contract (the PPA) between Komppa and NexTech precludes an unjust enrichment claim as to NexTech, and weighs heavily in favor of the fact that none of Komppa, Horowitz, or Flynn expected any person or entity other than NexTech to ever be liable for any sort of compensation due to Komppa.

Finally, the unjust enrichment claim is barred by a three-year statute of limitations. *See Gavin v. Club Holdings, LLC*, Civ. No. 15-175-RGA, 2016 WL 1298964, at *8 (D. Del. Mar. 31, 2016) (three-year statute of limitations for unjust enrichment claims in Delaware); *cf. McPike v. Zero-Gravity Holdings, Inc.*, 280 F. Supp. 3d 800, 809 (E.D. Va. 2017) (three-year statute of limitations for unjust enrichment claims in Virginia); Va. Code § 8:01–246(4).

Accordingly, Count VII (Unjust Enrichment) fails to state a claim and must be dismissed.

## IV. Counts VIII (Tortious Interference) Fails to State a Claim.

Komppa's final claim is against Defendants Horowitz, Flynn, and Kestrel for allegedly tortiously interfering with the PPA and its incorporated NDA. Count VII fails to state a claim because Komppa specifically pleads that Horowitz and Flynn are not strangers to the PPA and Komppa fails to plead that Defendants sought to maliciously or in bad faith injure Komppa. Count VIII also fails because Komppa was required to bring this action within three years of the alleged tortious interference, and, thus, the claim is barred by the statute of limitations.

### A. Count VIII Fails to State a Claim.

"It is well settled that a party to a contract cannot be held liable for breaching the contract and for tortiously interfering with that contract." *Kuroda*, 971 A.2d at 884 (citing *Shearin v. E.F. Hutton Group, Inc.*, 652 A.2d 578, 590 (Del. Ch. 1994)). In essence, "[i]mposition of liability for tortious interference with contractual relationship requires that the defendant 'be a stranger to both the contract and the business relationship giving rise to and underpinning the contract.'" *Tenneco*

*Auto., Inc. v. El Paso Corp.*, No. CIV.A. 18810-NC, 2007 WL 92621, at *5 (Del. Ch. Jan. 8, 2007) (citations omitted). Finally, to be successful, Komppa must "plead and prove that: (1) the [defendants] were "interfering part[ies]," and (2) the defendants "interfered 'not to achieve permissible financial goals but sought maliciously or in bad faith to injure plaintiffs.'" *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999).

Komppa alleges that Defendants Horowitz, Flynn, and the Kestrel entities intentionally interfered with the PPA by accessing and disclosing Komppa's work product to third persons. Compl. ¶¶ 170–184. Komppa further alleges that Horowitz, Flynn, and the Kestrel entities misused confidential information, with the intent to cause a breach of the PPA. *Id*. At the same time, Komppa concedes that Defendants Horowitz and Flynn are members of NexTech. Compl. ¶¶ 13–14. Komppa also concedes, throughout his Complaint, that Horowitz and Flynn, as members of NexTech, were actively involved with Komppa, Komppa's services, and the business relationship under the PPA. While neither Horowitz nor Flynn are parties to the NDA, they are not, if Komppa's allegations are taken at face value, strangers to the PPA between NexTech and Komppa.

Notably, Komppa alleges that NexTech, Horowitz, Flynn, and Kestrel are "alter egos of each other" with "a common business purpose, shared resources, shared ownership, and shared personnel," Compl. ¶¶ 123–26, and then specifically incorporates that allegation into the tortious interference count, *id.* at ¶ 170, further undermining any argument that Komppa successfully alleges that Horowitz, Flynn, and the Kestrel entities are strangers to NexTech's PPA with Komppa.

Finally, Komppa fails to allege in any sort of well-pled manner that Horowitz, Flynn, and/or the Kestrel entities acted with any malice towards him or the intent to cause him injury. The tale woven by Komppa is, at best, a tale of big ideas subsequently tempered by caution, with none of the defendants alleged to have made a single penny despite all of the parties' grandiose ideas.

23

Accordingly, Count VIII (Tortious Interference) fails to state a claim and must be dismissed.

**B.    Count VIII is Barred by the Statute of Limitations.**

Komppa was required to bring this cause of action within three years of it arising. "In Delaware, claims for tortious interference with contractual relations are governed by [a] three year statute of limitations." *WaveDivision Hldgs., LLC v. Highland Cap. Mgmt. L.P.*, 2011 WL 13175837, at *9 (Del. Super. Oct. 31, 2011) (citing 10 Del. C. § 8106). "[T]he cause of action begins to accrue at the time a tort is committed." *Id.* Even if using the last date pled in Komppa's Complaint, November 24, 2021 (which is after the PPA expired), as the date of the alleged tort, Komppa was required to file suit by November 24, 2024. Instead, Komppa filed suit on November 10, 2025. Accordingly, Count VIII (Tortious Interference) is time-barred and must be dismissed.

**V.    Komppa's Attorney's Fees Demand Should Be Dismissed Per the American Rule.**

Komppa, in his prayer for relief, includes a demand for attorneys' fees. "Delaware follows the 'American Rule' in awarding attorneys' fees, which provides that 'a litigant must, himself, defray the cost of being represented by counsel.'" *In re Delaware Pub. Sch. Litig.*, 312 A.3d 703, 715 (Del. 2024) (quoting *Dover Hist. Soc., Inc. v. City of Dover Plan. Comm'n*, 902 A.2d 1084, 1089 (Del. 2006)). Moreover, "[u]nder the American Rule governing the award of attorney's fees, a court of law will not award attorney's fees unless a statute, contract or procedural rule makes the award explicit." *Petition of State*, 708 A.2d 983, 989 (Del. 1998) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 241 (1975); *Brice v. State of Del., Del. Supr.*, 704 A.2d 1176, 1179 n. 1, 2 (1998)). The same is true under Virginia law. *Chacey v. Garvey*, 291 Va. 1, 8 (2015) ("Virginia follows the 'American Rule,' which provides that '[g]enerally, absent a specific contractual or statutory provision to the contrary, attorney's fees are not recoverable by a prevailing litigant from the losing litigant.'") (citation omitted). The attorney's fees demand thus fails.

24

**VI.    The Claims Against Flynn Must be Dismissed for Lack of Personal Jurisdiction.**

Komppa alleges three claims against Flynn: Quantum Meruit (Count VI), Unjust Enrichment (Count VII), and Tortious Interference (Count VIII). Komppa alleges that Komppa is a California resident, that Flynn is a Maryland resident, that NexTech, of which Flynn is a member, is a Delaware limited liability company, and that the Kestrel entities (of which Flynn is not alleged to be a member or partner) are Delaware entities. Compl. ¶¶ 10, 11, 12, 14, 15. Komppa does not allege that Flynn ever set foot in Virginia, that Komppa ever sit foot in Virginia, that any of the benefits Komppa allegedly provided to Flynn were provided while Komppa was in Virginia, that any of the alleged benefits received by Flynn pursuant to the alleged quantum meruit and the alleged unjust enrichment were received by Flynn anywhere other than Maryland, or that any allegedly tortiously interfering acts performed by Flynn occurred anywhere other than Maryland.

> For a district court to assert personal jurisdiction over a nonresident defendant, the plaintiff must prove that (1) Virginia's long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction would satisfy constitutional due process requirements. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *see Combs*, 886 F.2d at 676. "Because Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause, that statutory inquiry merges with" the due process inquiry. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

*Costello v. Waste Management, Inc*., 2025 WL 2432604, *2 (E.D.Va. August 22, 2025).

Pursuant to Va. Code § 8.01-328.1 (Virginia's long-arm statute), "[a] court may exercise personal jurisdiction over a person … as to a cause of action arising from the person's" engaging in conduct enumerated in the statute. "The purpose of our 'long arm statute' is to assert jurisdiction, to the extent permissible under the Due Process Clause of the Constitution of the United States, over nonresidents who engage in some purposeful activity in Virginia." *Danville Plywood Corp.*

*v. Plain & Fancy Kitchens, Inc.*, 218 Va. 533, 534 (1977). In turn, "[d]ue process requires … that a nonresident have 'certain minimum contacts' within the territory of the forum so that the maintenance of the action does not offend 'traditional notions of fair play and substantial justice.'" *Id*. at 535 (citations omitted). In practice, "[b]ecause Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'" *Young v. New Haven Advocate,* 315 F.3d 256, 261 (4th Cir. 2002).

The long-arm statute applies only to "a cause of action arising from" one of the enumerated circumstances, and reiterates this requirement by stating that "only a cause of action arising from acts enumerated in this section" warrant jurisdiction under the long-arm statute. Va. Code §§ 8.01-328.1(A), (C); *see, Cordova v. Alper,* 64 Va. Cir. 87, 109 (Fairfax County 2004) (noting that "§ 8.01-328.1(C) limits the breadth of the statute ...."); *see also, id.* at 113 (citing with approval a case "interpreting 'arising from' as requiring 'a causal link between the acts relied on for personal jurisdiction and the cause of action asserted.'") (citation omitted) (emphasis added).

"The plaintiff … has the burden to establish that personal jurisdiction exists over the out-of-state defendant." *Young,* 315 F.3d at 261 (citation omitted); *Turnbull v. Desrosier,* 61 Va. Cir. 375, 379 (City of Winchester 2003) ("The plaintiff has the burden of proving jurisdictional facts under the long-arm statute."). A plaintiff must allege "a factual basis for the showing [of sufficient jurisdictional basis], as 'conclusory pleading does not satisfy the requirements to exercise personal jurisdiction under the long-arm statute.'" *Nathan v. Takeda Pharms. Am., Inc.,* 83 Va. Cir. 216, 220 (Fairfax County 2011) (citation omitted). With the foregoing in mind, the analysis turns to the circumstances enumerated in Code of Virginia § 8.01-328.1.

Komppa plainly does not allege any basis for personal jurisdiction over Flynn pursuant to subsections (5) (breach of warranty in the sale of goods used in Virginia), (6) (real property located in Virginia), (7) (insuring a Virginia person or entity), (8) (spousal support), (9) (divorce), or (10) (taxes incurred in Virginia). Regarding subsection (1), as noted above, there is absolutely no well-pled allegation that Flynn conducted any business whatsoever in Virginia. Regarding subsection (2), there is no allegation that Flynn contracted to supply service or things in Virginia. Regarding subsection (3), there is no allegation that Flynn committed a tort while in Virginia. Regarding subsection (4), there is no allegation that Flynn caused a tortious injury to someone in Virginia while outside of Virginia. Accordingly, there is no basis for this Court to assert personal jurisdiction over Flynn, and he must, pursuant to Fed. R. Civ. P. 12(b)(2), be dismissed as a defendant.

## VII.    **Futility of Amendment**.

In light of the fact that Komppa's claims are all time-barred, Defendants respectfully request not only that the Complaint be dismissed, but that leave to amend not be granted, as an amended complaint would be futile. *See, e.g., Macon v. DuPont*, 2011 WL 1838785, *2 (E.D.Va. 2011) ("A court should deny a motion to amend as futile if the amended complaint could not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir.1995) (citing *Glick v. Koenig*, 766 F.2d 265, 268–69 (7th Cir.1985)); *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 420–21 (4th Cir.1990) ("There is no error in disallowing an amendment when the claim sought to be pleaded by amendment plainly would be subject to a motion to dismiss under [Rule] 12(b)(6).")).

## CONCLUSION

WHEREFORE, Defendants NexTech Infrastructure Partners LLC, Howard Horowitz, and

Chris Flynn, by counsel, respectfully request that the Court grant their Motion to Dismiss, dismiss

the Complaint with prejudice, and grant such other relief as the Court deems fair and just.

NEXTECH INFRASTRUCTURE
PARTNERS LLC
HOWARD HOROWITZ
CHRIS FLYNN
by Counsel

Stephen D. Charnoff (VSB No. 65329)
Rees Broome, PC
1900 Gallows Rd.
Suite 700
Tysons Corner, VA 22182
scharnoff@reesbroome.com
(703) 790-6233 (telephone)
(703) 852-1075 (facsimile)
*Counsel for Defendants NexTech
Infrastructure Partners LLC,
Howard Horowitz, and Chris Flynn*

28

## <u>DECLARATION OF HOWARD HOROWITZ</u>

The exhibits attached hereto are true and accurate copies thereof, and I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the foregoing statement is true and correct.

Executed on December 4, 2025

Howard Horowitz (Dec 4, 2025 17:11:31 EST)

Howard Horowitz

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of December, 2025, I will electronically file this pleading with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Richard M. Volin (VSB No. 87198)
313 Park Avenue, Suite 200A
Falls Church, VA 22046
(703) 988-1460 (telephone)
(703) 988-3484 (facsimile)
rich@volinemploymentlaw.com

Stephen L. Brodsky
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
(646) 216-8300
stephen@mazzolalindstrom.com

Stephen D. Charnoff (VSB No. 65329)
REES BROOME, PC
1900 Gallows Rd., Suite 700
Tysons Corner, VA 22182
scharnoff@reesbroome.com
(703) 790-6233 (telephone)
(703) 852-1075 (facsimile)
*Counsel for Defendants NexTech*
*Infrastructure Partners LLC,*
*Howard Horowitz, and Chris Flynn*