**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **RYAN KOMPPA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 1:25-cv-02009-MSN-WBP** |
| | : | |
| **NEXTECH INFRASTRUCTURE PARTNERS** | : | |
| **LLC, et. al.,** | : | |
| | : | |
| **Defendants.** | : | |

---

**DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS AMENDED COMPLAINT**

Defendants NexTech Infrastructure Partners LLC ("NexTech"), Howard Horowitz ("Horowitz"), Chris Flynn ("Flynn"), and Kestrel Venture Partners, LLC ("Kestrel," and, collectively with NexTech, Horowitz, and Flynn, the "Defendants"), by counsel, and pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, hereby submit their Memorandum in Support of Motion to Dismiss Amended Complaint, as follows.

**SUMMARY OF KOMPPA'S ALLEGATIONS**

**I.    Introduction.**

NexTech is a Delaware limited liability company. Amended Complaint ("Compl.") ¶ 11. Horowitz and Flynn are NexTech members. *Id*. at ¶¶ 12-14. Kestrel is Virginia limited liability company of which Horowitz is the managing member. *Id*. at ¶¶ 15-16. Plaintiff Ryan Komppa ("Komppa") alleges that he was introduced to Flynn in March 2020, and that Komppa discussed with Flynn the concept of "launching an industrial-scale data center platform." *Id.* at ¶ 22. Flynn, in May 2020, introduced Komppa to Horowitz, and the three "began exchanging ideas and decided to explore launching a data center platform venture together." *Id*. at ¶¶ 31, 33.

## II. The NDA and the PPA.

Sometime in the latter half of 2020, after further discussions about a data center venture, Komppa, Horowitz, and NexTech negotiated a non-disclosure agreement (the "NDA"). Compl. ¶ 36. The NDA was to remain in effect "with respect to any particular confidential information for a period of two (2) years following the last date or receipt of any Confidential Information ...." Compl. ¶ 39; *id.* at Exh. 1, Exh. C. The NDA, which states that it is governed by Delaware law, states that it "does not obligate [a] Party to .... enter into any agreement or relationship with the other Party, or make any offer to or accept any offer from the other Party."

The NDA is undated, unsigned, and, as a standalone document, not a contract, including because it states that it will be "effective as of the date stated below (the 'Effective Date')," but there is no "date stated below," such that it never became independently effective. *Id.* The NDA was, however, subsequently incorporated into a November 12, 2020 Exclusive Private Placement Agreement (the "PPA") between NexTech and Komppa. *See* Compl. ¶¶ 46, 54; Compl. Exh. 1.

The PPA contains three exhibits: Exhibit A (Fee Schedule), Exhibit B (Payment Terms & Broker Dealer Services), and Exhibit C (the NDA). *Id.* at Exh. 1. The PPA states that it "shall expire three hundred sixty (360) days" from November 12, 2020, i.e., November 7, 2021. Compl. ¶ 51; *id.* at Exh. 1, § 2. Importantly, the PPA is governed by Delaware law. Compl. Exh. 1, § 12.[1]

The PPA states that Komppa shall provide certain services, including "[a]ssist[ing] with equity capital raising," and that, "subject to the provisions of this Agreement, NexTech shall pay to Mr. Komppa the fees as set out in the Fee Schedule attached to this Agreement as Exhibit A," which fees "shall be payable by NexTech in accordance with the payment terms set out in Exhibit B to this Agreement." Compl. Exh. 1, §§ 1, 5 (emphasis added). The Fee Schedule states:

---

[1] The PPA also notes that "[a] person who is not a party to this Agreement has no right under the Contracts (Rights of Third Parties) Act 1999 to enforce or to enjoy the benefit of any term of this Agreement." Compl. Exh. 1, § 16. The Contracts (Rights of Third Parties) Act 1999 is a United Kingdom law that is not applicable in Delaware or any other state.

NexTech shall pay to Mr. Komppa a success-based fee (the "Success Fee") in an amount equal to two percent (2.0%) of the first $200 million of <u>equity committed</u>, one and three quarters percent (1.75%) of the next $300 million <u>committed</u> and one and a half percent (1.5%) of the balance of <u>funded</u> investment amounts with respect to an investment in investment property, general partnership capital, entity investment, or any other investment <u>approved by NexTech</u>.

Compl. Ex. 1, Exh. A, § A.1 (emphases added).

The Fee Schedule further states that, "In the event that NexTech secures a <u>firm capital commitment</u> in the form of a blind pool fund, entity level, or other investments with a defined dollar amount, these Success Fees will be payable upon initial capital commitment ...." *Id*. (emphasis added). In turn, PPA Exhibit B states that, "All Fees are due and payable within 30 days of NexTech's receipt of the relevant invoice properly reflecting the terms and conditions set forth in this Agreement." Compl. Ex. 1, Exh. B, § B.1.

## III.    Komppa's Alleged Services.

Komppa alleges that between December 2020 and February 2021, he developed work product for the Defendants. Compl. ¶ 55. Komppa then, in February 2021, began working on acquiring investors for the potential data center project. *Id*. at ¶ 57. Komppa alleges that he obtained "proposed commitments," *id*. at ¶ 59, from Gordon & Co., L.P. ("<u>Angelo Gordon</u>"), MSD Capital, L.P. ("<u>MSD</u>"), and Townsend Group ("<u>Townsend</u>"). *Id.* at Compl. ¶ 58.

### A.    The Angelo Gordon proposal.

Regarding Angelo Gordon, Komppa alleges that "[i]n a term sheet issued on June 7, 2021, Angelo Gordon <u>proposed</u> a $600 million equity commitment to NexTech," *id.* at ¶ 75 (emphasis added), and that "[a]ll that was needed was to iron out details ...." *Id.* at ¶ 61.

Komppa's allegations are flatly belied by the Angelo Gordon term sheet. The June 7, 2021 Angelo Gordon term sheet is attached hereto as <u>Exhibit A</u> (said exhibit containing the transmittal email and Angelo Gordon's redline of NexTech's proposed term sheet), and the term sheet is far

from an "equity commitment."[2] That is true both from its content, as explained below, and because a "term sheet" is inherently <u>not</u> a commitment because a term sheet is, by its nature, not a contract, but, instead, a non-binding agreement to agree. *See, e.g.*, *Global Hub Logistics v. Tamerlane Global Services, Inc.*, 2013 WL 1332048, *1 (E.D.Va. March 29, 2013)("Where a term sheet simply reflects the intention of the parties to agree on a final settlement at a later date, it is merely an 'agreement to agree' and not a binding contract."); *see also*, Exhibit A (Angelo Gordon proposing new language stating, "<u>The terms of this Proposed Term Sheet shall be non-binding</u> and NexTech nor [sic] Angelo Gordon Real Estate Inc. shall be bound to the other unless and until an agreement containing these and ... other relevant terms has been fully negotiated and executed by the parties.")(emphasis added).

As noted in Angelo Gordon's June 7, 2021, transmittal email, the document transmitted to Komppa was "our mark up to the term sheet," i.e., a counteroffer to an earlier NexTech proposal. Angelo Gordon's redline of the term sheet shows any number of unsettled, but very much material, terms, including that (1) the equity contribution amount is not fixed (with $600,000,000 being an "up to" potential, but not "committed"), (2) the identity of the entity contributing the equity is not stated (instead reference being made to an "affiliate of Angelo Gordon Real Estate Inc."), (3) the equity would only be contributed alongside "NexTech Investment Company" (an entity that does

---

[2]    The Court can review the Angelo Gordon term sheet without converting the Motion to Dismiss into a Motion for Summary Judgment. *See, e.g.*, *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D.Va. 1995) ("when a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss ... and the Court may consider the same without converting the motion to one for summary judgment") *citing Branch v. Tunnell,* 14 F.3d 449, 453–54 (9th Cir. 1994) ("documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered"); *see also*, *Witthohn v. Federal Ins. Co.*, 164 Fed. Appx. 395 (4th Cir. 2006) (in connection with a motion to dismiss, "a court may consider ... documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed.") (*citing Phillips v. LCI Int'l, Inc.,* 190 F.3d 609, 618 (4th Cir. 1999)). Horowitz's declaration under penalty of perjury that Exhibit A is a true and accurate copy of the email transmitting the June 7, 2021 Angelo Gordon term sheet, and Angelo Gordon's redline of the term sheet attached thereto, is included below.

not exist) "on a pro rata basis," (4) the internal rate of return ("IRR") is still being negotiated, (5) Angelo Gordon wanted the "Principals" (presumably the members) of NexTech to contribute at least $10,000,000 of the Principals' personal funds, (6) Angelo Gordon sought to change the timing of NexTech's investment, such that NexTech would have to invest $6,500,000 through the second tranche (as opposed to NexTech's proposal of $4,000,000), (7) Angelo Gordon sought to materially pare back NexTech's leasing fee, which would be a significant NexTech profit center, (8) Angelo Gordon sought to limit NexTech's ability to collect a property management fee, and (9) Angelo Gordon sought to materially increase the interest rate on a proposed $5,000,000 loan to NexTech.[3]

Accordingly, the June 7, 2021 Angelo Gordon term sheet, which Komppa chose not to attach to the Amended Complaint, despite the fact that the Defendants attached the term sheet to their December 4, 2025 Memorandum in Support of Motion to Dismiss regarding the original Complaint, belies Komppa's allegation that, "In a term sheet issued on June 7, 2021, Angelo Gordon proposed a $600 million equity commitment to NexTech," Compl. at ¶ 75, and calls into question what, exactly, Komppa means when he uses the word "commitment."

The Angelo Gordon "term sheet" was not a final, agreed-upon term sheet (which, again, would have been non-binding even if it had ultimately been negotiated into a final form). Instead, it was a heavily-edited counterproposal, and NexTech shortly thereafter rejected Angelo Gordon's proposed terms, *see* Compl. ¶ 96, such that no party ever committed to do anything.

---

[3]     Komppa, apparently in response to reading the Defendants' December 4, 2025 Memorandum in Support of Motion to Dismiss regarding the original Complaint, seeks to inoculate himself from this argument by adding new allegations that the "tranches [would be] agreed upon later," and that "[t]here was an agreement in principle on the internal rate of return ...." Compl. ¶¶ 76, 78. The June 7, 2021 term sheet makes starkly clear, however, that neither the tranches nor the internal rate of return were agreed upon, and the Court can ignore allegations in a complaint that are contradicted by its exhibits. *See, e.g., U.S. Golf Learning Institute, LLC v. Club Managers Ass'n of America*, 2011 WL 5599379, *3 (E.D.Va. Nov. 15, 2011) ("Should allegations in the complaint conflict with an exhibit attached pursuant to Fed.R.Civ.P. 10(c), the exhibit prevails. Accordingly, 'the Court need not accept as true conclusions or inferences from the complaint that are contradicted by the attached exhibits.'").

## B. The MSD Capital, L.P. proposal.

Komppa alleges that, after deciding not to finalize a non-binding term sheet with Angelo Gordon, NexTech began discussions with MSD about a potential data center project. *Id*. at ¶ 96. Komppa and the Defendants met with MSD in mid-July 2021, *id.* at ¶ 98, and "MSD conveyed its proposal of a $600 million equity investment offer to NexTech by a term sheet, dated July 21, 2021." *Id.* at ¶ 100 (emphases added). The "term sheet dated July 21, 2021," is attached hereto as Exhibit B (said exhibit containing the July 22, 2021 MSD transmittal email to Komppa and the two attachments thereto, which are MSD's July 21, 2021 term sheet in redline format showing MSD's revisions to the prior NexTech iteration of the term sheet and MSD's term sheet in clean format). Exhibit B is a true and accurate copy of the transmittal email and its attachments. *See* Declaration.

As noted in MSD's July 22, 2021, transmittal email, the document transmitted to Komppa was "our revised term sheet and a redline vs. your most recent draft," i.e., a counteroffer to an earlier NexTech proposal. MSD's redline of the term sheet shows any number of unsettled, but very much material, terms, including that MSD (1) sought to reduce NexTech's asset management fee, (2) sought to delete a term whereby NexTech sought to create an opportunity to strip MSD of its right of first refusal on deals, (3) introduced a brand new and material loan proposal, (4) proposed gaining an initial 15% equity in NexTech, with the potential of increasing its ownership percentage based on loans made, (5) simply deleted the "Ownership & Economic Participation" section of the term sheet, which addressed MSD's minimum investment, and (6) questioned the terms regarding the ability of the parties to leverage the investment for purposes of a loan.

Again, NexTech did not come to terms with MSD and decided not to move forward with MSD as an investor. Compl. ¶ 104.

C.    **The Townsend Proposal**.

Komppa also alleges, in a conclusory manner and with no supporting factual allegations whatsoever, that Townsend Group ("<u>Townsend</u>") committed to an "add-on" commitment. Compl. ¶¶ 4, 107. There is no allegation of when the "add-on" commitment was made or would materialize, no allegation of the material terms of the "commitment," whether Komppa told any Defendant any details of the Townsend "commitment," or any other factual hallmark of an actual commitment, let alone a proposal that the Defendants could accept or decline. *See, e.g.*, *Grimes v. Dept. of Defense*, 2025 WL 1334054, *4 (E.D.Va. May 7, 2025)(on a 12(b)(6) motion, "[t]he Court need not accept ... conclusory allegations."). Instead, Komppa alleges the "commitment" merely in passing.

**IV.    Wood Dale**.

Komppa alleges that, "in or about late June to July 2021 ... Horowitz began to consider having Kestrel invest in a data center platform project centered in Wood Dale, Illinois, a suburb of Chicago, utilizing equity from MSD to do so." Compl. ¶ 102. Horowitz then, according to Komppa, indicated an unwillingness to "take the entrepreneurial risk and effort involved in ... NexTech," *id.* at ¶ 117, and the Wood Dale project never came to fruition through NexTech, Kestrel, or any other entity or person. *Id.* at ¶¶ 131–132. In short, no project was ever more than an idea.

**V.    Komppa's Misuse of the term "Commitment."**

Pursuant to the terms of the PPA, NexTech was to pay Komppa based on <u>equity committed</u>. Compl. Ex. 1, Exh. A, § A.1. Yet, in his Amended Complaint, Komppa alleges nothing more than proposed investments. Regarding Angelo Gordon's "commitment," Komppa concedes that the commitment was merely a proposal. *Id.* at ¶¶ 74-75. Regarding MSD, Komppa does not even go so far as to call it a commitment, instead, referring to it as a "proposal of [an] ... offer ...." *Id.* at ¶ 100. Regarding Townsend, Komppa alleges that "[t]he Townsend Group proposed an 'add-on' investment ...." *Id.* at ¶ 107. None of these under-negotiation proposals constituted a "commitment."

Komppa alleges that "[t]he investment committees of the companies that made commitments had approved the investments, and had allocated, and thus 'committed' funds to the deal." *Id* at. ¶ 60. These allegations are belied by the June 7, 2021, and July 22, 2021, transmittal emails and term sheets wherein both Angelo Gordon and MSD sent counteroffers containing new, unsettled, and highly material terms. *See* Exhibits A and B. A commitment comes after, not before or during, negotiations, and it is sophistry to allege that the inherently noncommittal term sheets, which, besides being non-binding, were not even agreed upon, constituted "commitments."[4]

## VI. The Alleged Breach of the PPA and NDA.

Komppa, despite not securing any equity commitments, capital commitments, or funded investments, issued an invoice to PPA. Compl. ¶ 143. Komppa fails to attach the invoice to the Complaint, but a copy of the invoice is attached hereto as <u>Exhibit C</u>. *See also* Declaration (stating that Exhibit C is a true and accurate copy thereof). The invoice is dated March 21, 2022, such that payment was, per the PPA, due on or before April 20, 2022. Komppa alleges that "NexTech ... failed to pay Komppa's invoice and 30 days have transpired after NexTech's receipt of Komppa's invoice." Compl. at ¶ 144; *cf.* Exh. 1, Exh. B, § B.1 (payment due within 30 days of invoicing).

## VII. The PPA Expires.

The parties did not extend the PPA, and it expired on November 7, 2021. *Id*. at ¶ 126.

## PROCEDURAL BACKGROUND

Komppa filed his Complaint on November 10, 2025. NexTech, Horowitz, and Flynn filed a Motion to Dismiss on December 4, 2025. Dkt. 8. Komppa then filed the instant Amended Complaint on December 18, 2025. Dkt. 13. Komppa also realized that he had named as defendants

---

[4] *Cf.*, Lewis Carroll, *Through the Looking-Glass, and What Alice Found There* (1871) ("'When *I* use a word,' Humpty Dumpty said ..., 'it means just what I choose it to mean—neither more nor less.'") (emphasis in original).

two Delaware entities that happened to have names beginning with "Kestrel," but which have absolutely no relation to Kestrel, and, in the Amended Complaint, seeks to correct the error by naming Kestrel as a new defendant in place of the previous Kestrel defendants.

The Amended Complaint contains five counts: (1) Breach of Contract - Breach of PPA's Success Fee (against NexTech and Horowitz); (2) Breach of Contract - Breach of PPA's Non-Circumvention Terms (against NexTech and Horowitz); (3) Breach of Contract - Breach of PPA's NDA (against NexTech and Horowitz); (4) Breach of Implied Contractual Duty of Good Faith and Fair Dealing (against NexTech and Horowitz); and (5) Tortious Interference with Contract (against Horowitz, Flynn, and Kestrel). None of the causes of actions are pled in the alternative.

## LAW AND ARGUMENT

The standard of review for a Rule 12(b)(6) motion is well known:

> A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. In deciding such a motion, a court must first be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." A court must take "the material allegations of the complaint" as admitted and liberally construe the complaint in favor of a plaintiff. While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." Indeed, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level."

> In ... *Ashcroft v. Iqbal*, 129 S. Ct 1937 (2009), the Supreme Court expanded upon [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)] by articulating a two-pronged analytical approach to be followed in any Rule 12(b)(6) test.
> First, a court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the presumption of truth. "[B]are assertions" that amount to nothing more than a "formulaic recitation of the elements" do not suffice.

> Second, assuming the veracity of "well-pleaded factual allegations" a court must conduct a "context-specific" analysis drawing on "its judicial experience and common sense" and determine whether the factual allegations "plausibly suggest an entitlement to relief." The plausibility standard requires more than a showing of "a sheer possibility that a defendant has acted unlawfully."

*Gerdak v. Doe, et al.*, 2010 U.S. Dist. LEXIS 107326, *4-7 (E.D.Va. 2010) (citations omitted).

"[W]hile the court must 'accept the pleader's description of what happened' and 'any conclusions that can be reasonably drawn therefrom,' the court 'need not accept conclusory allegations encompassing the legal effects of the pleaded facts ....'" *Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 814 (E.D. Va. 2016) (citations omitted). Further, the court is not required to accept as true a legal conclusion unsupported by factual allegations. *Id.*

## I.     Counts I, II, and III (Breach of Contract) Fail as a Matter of Law.

The breach of contract counts fail to state claims. Any alleged breach of contract claim arising from the PPA, whether the breach involved the success fee, the non-circumvention terms, or the NDA, is barred by Delaware's three-year statute of limitations on breach of contract claims.

Further, Komppa fails to sufficiently plead that he obtained an equity commitment, capital commitment, or funded investment, as the "commitments" Komppa alleges were not commitments, but were, instead, mid-stream, heavily-qualified, high-level, not-agreed-upon proposals stated in term sheets that, even if accepted by NexTech, would *still* not have been binding commitments.

Counts I, II, and III also fail as to Horowitz, as he is not a party to the PPA, and the Amended Complaint completely fails to allege any factual basis for piercing NexTech's corporate veil.

### A.     Counts I, II, and III are Barred by the Statute of Limitations.

The PPA and the NDA are governed by Delaware law. *See* PPA § 12, NDA § 9. In order to state a breach of contract claim under Delaware law, a plaintiff must plead (1) the existence of a contract, (2) the breach of a contractual obligation, and (3) a resultant damage. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). Damage is an essential element of a breach of contract claim. *See In re Cendant Corp. Sec. Litig.*, 181 F. App'x 206, 210 (3d Cir. 2006).

Komppa, in Counts I, II, and III, alleges that NexTech and Horowitz breached three provisions of the PPA: (1) the Success Fee, (2) the Non-Circumvention Terms, and (3) the NDA.

Compl. ¶¶ 137–49. "Under Delaware law, a three-year statute of limitations applies to claims for breach of contract ...." *Fike v. Ruger*, 754 A.2d 254, 260 (Del. Ch. 1999), *aff'd*, 752 A.2d 112 (Del. 2000) (citing 10 Del. C. § 8106). "A cause of action accrues at the moment of the wrongful act, even if the plaintiff is ignorant of the wrong." *Id.* (citations omitted).

### 1. Count I (Breach of the PPA's Success Fee).

Komppa alleges that he "secured" alleged "equity commitment[s]" from Angelo Gordon and MSD "[d]uring the term of the PPA," and also "secured an add-on commitment[]," from Townsend, again "[d]uring the term of the PPA." Compl. ¶¶ 140–42. Komppa further alleges that he issued an invoice to NexTech, but it was not paid. *Id.* at ¶¶ 143–44; *but see* Compl. Exh. 1, Exh. A, § A.1 ("In the event that NexTech secures a firm capital commitment ... with a defined dollar amount, these Success Fees will be payable <u>upon</u> initial capital commitment ....") (emphasis added).

The term of the PPA was the period between November 12, 2020 and November 7, 2021. Compl. ¶¶ 51, 126. NexTech and Horowitz do not agree that it was a breach not to pay Komppa a fee, including because no equity commitments were made, but, even if a breach occurred, Komppa was required to bring this action within three years of the failure to pay the alleged fee due to Komppa. *See Fike*, 754 A.2d at 260; 10 Del. C. § 8106. Komppa did not. Instead, Komppa sent an invoice that was due on April 20, 2022, but did not file suit until November 10, 2025, which was (1) five years after he began rendering services, (2) almost five years after the parties entered into the PPA, (3) over four years after he allegedly secured "commitments" in 2021, (4) over four years after the PPA expired, and (5) three years <u>and six-plus months</u> after the invoice's alleged due date.

Komppa was required to file a breach of contract action no later than April 20, 2025. Komppa did not. Accordingly, Count I must be dismissed pursuant to the statute of limitations.

### 2. Count II (Breach of the PPA's Non-Circumvention Terms).

Komppa next alleges that NexTech and Horowitz breached the Non-Circumvention section of the PPA when NexTech allegedly "circumvented and diverted Komppa's efforts and services rendered pursuant to the PPA[.]" Compl. ¶¶ 151. Komppa asserts that he provided NexTech and Horowitz work product from December 2020 to February 2021, and that NexTech used, exploited, and diverted the work product to Kestrel, Horowitz, and Flynn. *Id.* at ¶¶ 55, 157. The alleged misuse occurred in or about July 2021, as Komppa alleges that NexTech and Horowitz allegedly declined the "commitment" from MSD in July 2021 so that they could, instead, immediately turn to involving MSD in the potential funding of the Wood Dale project, which would be pursued via Kestral. *Id.* at ¶¶ 102–106. The Wood Dale project did not come to fruition. *Id.* at ¶¶ 128–132.

Any and all alleged breaches of the Non-Circumvention provision of the PPA occurred in 2021; accordingly, the breach of contract claim is barred pursuant to Delaware's three-year statute of limitations on breach of contract claims, and Count II must be dismissed.

### 3. Count III (Breach of the PPA's NDA).

The exact same factual allegations asserted in support of Count II are asserted in support of Count III. The alleged breach of the NDA's terms regarding disclosure of confidential information, if such breach occurred, occurred, per Komppa's allegations, in 2021. In turn, a breach of contract claim is barred by Delaware's three-year statute of limitations, and Count III must be dismissed.

### B. Count I Fails to State a Claim for Breach of Contract.

Aside from Count I being barred by the statute of limitations, the term sheets referenced in the Amended Complaint were draft, non-binding documents that did not entitle Komppa to payment pursuant to the PPA.

"A complaint alleging breach of contract must show the existence of a contract, allege a breach of that contract, and damages resulting from the alleged breach." *Boissonneault v.*

12

*Delaware Podiatric Med.*, P.A., No. CV N24C-08-300 DJB, 2024 WL 5055538, at *3 (Del. Super. Ct. Dec. 9, 2024) (citation omitted). Komppa sufficiently pleads the first element because the PPA was a contract between Komppa and NexTech, but no breach is sufficiently alleged.

As noted above, the PPA's Fee Schedule states:

> NexTech shall pay to Mr. Komppa a success-based fee (the "Success Fee") in an amount equal to two percent (2.0%) of the first $200 million of <u>equity committed</u>, one and three quarters percent (1.75%) of the next $300 million <u>committed</u> and one and a half percent (1.5%) of the balance of <u>funded</u> investment amounts with respect to an investment in investment property, general partnership capital, entity investment, or any other investment <u>approved by NexTech</u>.

Compl. Ex. 1, Exh. A, § A.1 (emphases added).

<u>First</u>, neither the Angelo Gordon nor the MSD "commitments" were actually commitments; instead, the term sheets contain material reservations, qualifications, and contingencies, such that the term sheets are mere proposals, not commitments. *See also*, Compl. ¶¶ 74-75, 100 (Komppa alleging that Angelo Gordon "<u>proposed</u> a $600 million equity commitment to NexTech," and MSD "conveyed its <u>proposal</u> of a $600 million equity investment."). Conceptually, it is worth asking: If Angelo Gordon or MSD had chosen not to invest funds, could NexTech have successfully sued for such failure? No. No contractual commitments ever existed, as there was neither a meeting of the minds nor the requisite material terms upon which contract claims could be based. There was, in short, no "commitment" from either entity, and, thus, the "Success Fee" was never due to Komppa.

Regarding Townsend, Komppa alleges so little about Townsend that he plainly fails to allege a "commitment" from Townsend. Komppa alleges that he "secured an add-on commitment from Townsend," that he "secured ... an add-on commitment from Townsend," that "[t]he Townsend Group proposed an 'add-on' investment commitment of $150 million," that "Komppa secured a proposal of add-on commitments [sic] Townsend [sic] valued at $150 million," and that the Townsend "commitment" "assume[d] that an initial ~$500m would be provided by MSD or

Angelo Gordon." Compl. ¶¶ 4, 58, 107, 142. That is it. These repetitious allegations are so devoid of factual support that they are mere conclusions that the Court need not accept. *See, Gerdak*, 2010 U.S. Dist. LEXIS 107326, *4-7 ("the legal framework of the complaint must be supported by factual allegations that 'raise a right to relief above the speculative level.'") (citations omitted). Further, Komppa alleges that the Townsend "commitment" was necessarily contingent on MSD or Angelo Gordon investing funds, and Komppa did not secure, and certainly did not obtain, such funding.

Second, the alleged term sheets with MSD and Angelo Gordon were never, as explained at length above, finalized, and, in any event, even if they had been finalized, term sheets are inherently non-binding and cannot constitute a "commitment," because they are mere agreements to agree, i.e., the parties necessarily contemplate a subsequent, actually-binding agreement that will constitute the "commitment." *See Global Hub Logistics*, 2013 WL 1332048, *1.

## C. Any Damages Requested by Komppa in Counts I, II, and III are Speculative.

In Count I, Komppa provides a table purporting to summarize his "earned fees" from the Angelo Gordon, MSD, and Townsend "commitments." Compl. ¶ 142. Counts I, II, and III also include a demand for "damages from NexTech in an amount to be proved at trial." Compl. ¶¶ 147, 154, 160. "'The law does not require certainty in the award of damages where a wrong has been proven and injury established. ... Speculation is an insufficient basis, however.'" *Lake Treasure Holdings, Ltd. v. Foundry Hill GP LLC*, No. CIV.A. 6546-VCL, 2014 WL 5192179, at *12 (Del. Ch. Oct. 10, 2014) (quoting *Del. Exp. Shuttle, Inc. v. Older*, 2002 WL 31458243, at *15 (Del. Ch. Oct. 23, 2002)). Here, Komppa posits that he is entitled to damages simply because investors he identified entertain the *idea* of investing, though they may not ultimately invest, or may not agree to invest a fixed sum. The law does not support Komppa's position, as it is obviously speculative as to what commitments Angelo Gordon, MSD, and/or Townsend ultimately would have made.

**D.     Counts I, II, and III Must be Dismissed as to Horowitz**.

As discussed above, the NDA is not signed and was never, as a standalone document, a contract, because it contemplates being "effective" on a date set forth in the NDA, but no date is set forth in the NDA. Thus, the NDA is only enforceable insofar as it is an exhibit to the PPA, and the PPA is between NexTech and Komppa. Neither Horowitz nor Flynn are parties to the PPA.

Counts I, II, and III allege breach of the PPA, and Komppa asserts that both NexTech <u>and</u> Horowitz, personally, are liable for the breaches of the PPA. In short, Komppa seeks to pierce the corporate veil of NexTech to get to Horowitz, but Komppa alleges no facts warranting such relief.

> "Veil piercing is a tough thing to plead and a tougher thing to get, and for good reason." "Delaware public policy does not lightly disregard the separate" corporate form. "This Court will disregard the corporate form only in the 'exceptional case.'" When determining whether to pierce the corporate veil, the Court considers "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade for the dominant shareholder." No single factor is determinative. The central inquiry is whether a defendant abused or manipulated "the corporate form." In other words, "the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." Even then, the plaintiff must plead "an overall element of injustice or unfairness."
>
> Undercapitalization or insolvency alone is not enough to warrant "piercing of the corporate veil."

*PXP Producing Co. LLC v. MitEnergy Upstream LLC*, 342 A.3d 402, 416-17 (Del. Ch. 2025).

Komppa uniformly fails to allege any basis upon which the corporate veil may be pierced to get to Horowitz personally. There are no <u>well-pled</u> allegations of NexTech's capitalization, solvency, corporate formalities, or loss of funds due to siphoning. *See* Compl. ¶¶ 134–36. Instead, Komppa alleges that "NexTech was under-capitalized," *id.* at ¶ 135, but alleges no facts to support his plainly conclusory allegation. Komppa also alleges that "NexTech, and Kestrel ... failed to respect the legal requirements relating to their entity maintenance," *id.* at ¶ 136, but, again, fails to

allege facts supporting the conclusory allegation.[5] Regarding the requirement that a plaintiff allege facts tending to show that an entity "must be a sham and exist for no other purpose than as a vehicle for fraud," but Komppa, instead of alleging that NexTech "exist[ed] for no other purpose than as a vehicle for fraud," alleges that NexTech was, in fact, purposeful and directed towards the potential of investing in data centers. Accordingly, Counts I, II, and III must be dismissed as to Horowitz.

## II. Count IV (Breach of Implied Contractual Duty of Good Faith and Fair Dealing) Fails to State a Claim and is Barred by the Statute of Limitations.

In Count Four, Komppa alleges that "The PPA contains an implied duty of good faith and fair dealing,"; that "NexTech frustrated the purpose of the PPA by rejecting good investment offers,"; that "NexTech breached its implied contractual duty of good faith and fair dealing under the PPA by refusing to negotiate in a manner that would bring about the closing on the deals presented by Komppa,"; that "Horowitz directed and controlled the conduct of ... NexTech"; and that "NexTech and Horowitz breached the implied duty of good faith and fair dealing implied by the PPA and the PPA's NDA." Compl. §§ 162,173, 179, 181-182.

Count IV is barred by the statute of limitations. Further, the PPA contemplates all of the alleged actions and potential inactions Komppa raises in the Complaint as the purported bases for his claims, such that the implied duty of good faith and fair dealing is inapplicable.

### A. Komppa Was Required to Bring Count IV Within Three Years.

Count IV is also subject to a three-year statute of limitations and is therefore barred. The alleged implied duties arose from a Delaware contract, and actions based on a promise are subject

---

[5] The Court can also take judicial notice of data available on state websites, and the data about NexTech available via the internet on the Delaware Secretary of State website shows that NexTech is in good standing and that NexTech's history of filings consists of just its Articles of Organization, meaning that it never had to file reinstatement documents, i.e., it has always maintained its good standing. *See* Exhibit D, attached hereto. Similarly, Kestrel, per the website of the Virginia State Corporation Commission, is in good standing, and its history of filings, also available via the internet on the SCC website, indicates that it has always maintained its good standing. *See* Exhibit E, attached hereto.

to 10 Del. C. § 8106, "which provides a three-year limitations period" for contract claims. *Lankford v. Scala*, No. CIV. A. 94C-04-023, 1995 WL 156220, at *2 (Del. Super. Ct. Feb. 28, 1995); *see also Lavender v. Koenig,* No. CV K13C-08-024 RBY, 2017 WL 443696, at *3 (Del. Super. Ct. Feb. 1, 2017), *aff'd*, 171 A.3d 1117 (Del. 2017) (statute of limitations barred plaintiff's claims for a breach of the implied covenant of good faith and fair dealing claim because the action accrued more than three years before plaintiff filed suit); *Homsey Architects, Inc. v. Nine Ninety Nine, LLC*, 2010 WL 2476298, *8 (Del. Ch. Ct. June 14, 2010) (three-year limitations period).

As previously stated, Komppa alleges Defendants violated the duty of good faith and fair dealing "by refusing to negotiate in a manner that would bring about the closing on the deals presented by Komppa[.]" Compl. ¶¶ 179, 182. Any alleged breaches occurred in 2021, such that Komppa was required to file suit by 2024. *See Lankford v. Scala*, No. CIV. A. 94C-04-023, 1995 WL 156220, at *2 (Del. Super. Ct. Feb. 28, 1995). Komppa filed suit in November 2025. Accordingly, Count IV is barred by Delaware's statute of limitations.

### B.    The Breach of Duty of Good Faith and Fair Dealing Claim Fails.

Despite the detailed underlying contract (the PPA), Komppa alleges that NexTech and Horowitz breached the implied duty of good faith and fair dealing implied by the PPA and the NDA. Compl. ¶¶ 161–83. Komppa mentions the implied duty of good faith and fair dealing as a Virginia law concept, *id.* at § 173, but (1) Delaware law controls because the duty arises from a Delaware contract, *see Whitestone REIT Operating P'ship, L.P. v. Pillarstone Cap. REIT*, No. 2022-0607-LWW, 2024 WL 274228, at *7 (Del. Ch. Jan. 25, 2024) ("a claim for breach of the implied covenant is contractual,"), and (2) Virginia law will do Komppa no favors, as it is difficult to overstate Virginia courts' hostility to the idea that contracts specifying the terms of two parties'

obligations to each other also contain nebulous, unwritten duties of good faith and fair dealing.[6]

Delaware courts, while recognizing a cause of action for a breach of the duty of good faith and fair dealing, construe the claim narrowly:

> [T]he implied covenant is "a limited and extraordinary legal remedy" and the existing contract terms control. The implied covenant cannot be used to rewrite an agreement or "rebalanc[e] economic interests after events that could have been anticipated, but were not, that later adversely affected one party to [the] contract." "But when the contract is 'truly silent' about the issue, and the express terms of the partnership agreement naturally imply certain corresponding conditions, [parties] are entitled to have those terms enforced according to the[ir] reasonable expectations ... at the time of contracting."
>
> Because a claim for breach of the implied covenant is contractual, the elements are those of a breach of contract claim. [A Plaintiff] must prove "a specific implied contractual obligation, a breach of that obligation by [a Defendant], and resulting damage to [Plaintiff]."

---

[6]    *See, e.g., Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 385 (1997) ("when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights … Generally, such a covenant cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist."); *JPMCCM 2010-C1 Aquia Office LLC v. Mosaic Aquia Owner, LLC*, 101 Va. Cir. 34, *4 (Stafford Cir. Ct. Jan. 15, 2019) (demurrer to implied covenant count sustained because "the complaint is clear that the parties' relationship was governed by a valid and binding written contract."); *So. Bank and Tr. Co. v. Woodhouse*, 92 Va. Cir. 402, *6 (City of Norfolk Cir. Ct. May 26, 2016) ("Virginia does not recognize an independent action for breach of the implied covenant in cases that are not governed by the UCC."); *Emanuel v. Bank of Am., N.A.*, 89 Va. Cir. 272, 273 (City of Richmond Cir. Ct. Oct. 31, 2014) ("[T]here is no Virginia authority that a cause of action of good faith and fair dealing exists."); *Hershberger v. Bank of Am., N.A.*, 92 Va. Cir. 470, *2 (Caroline Cty. Cir. Ct. Sep. 13, 2013) ("a separate action for Breach of Implied Covenant of [G]ood Faith and Fair Dealing does not exist"); *Waters v. CitiMortgage*, 92 Va. Cir. 460, *6 (Chesterfield Cty. Cir. Ct. Jan. 14, 2013) (demurrer sustained because "a contract existed between the parties ... which governed the parties' duties and obligations. As such, an implied covenant of good faith and fair dealing is inapplicable ...."); *Allaun v. Scott*, 59 Va. Cir. 461, 465 (City of Norfolk Cir. Ct. Sep. 19, 2002) ("There is no support for ... a duty [of good faith and fair dealing], nor an independent tort based on its breach, at common law."); *Will & Cosby Assocs. v. Salomonsky*, 48 Va. Cir. 500, 504–05 (City of Richmond Cir. Ct. Apr. 22, 1999) ("The court also holds that since all of these parties had contracts with each other, no implied contract existed."); *Spiller v. James River Corp.*, 32 Va. Cir. 300, 307 (City of Richmond Cir. Ct. Dec. 23, 1993) ("Virginia law does not recognize a claim for breach of a covenant of good faith and fair dealing."); *see also, Katti v. Moore, et al.*, 2006 U.S. Dist. LEXIS 85486, *10 (E.D.Va. 2006) ("Under Virginia law, once two parties agree to a valid and binding contract, one party may not use any implied duty to modify or override the contract."); S*need v. Am. Bank Stationary Co., Div. of ABS Corp.*, 764 F. Supp. 65, 67 (W.D.Va. 1991) ("Plaintiff ... also alleges breach of an implied covenant of good faith and fair dealing. However, this Court specifically has rejected such a claim in the past, because the cause of action is not recognized under Virginia law.") (emphasis added).

*Whitestone REIT Operating P'ship, L.P. v. Pillarstone Cap. REIT*, No. 2022-0607-LWW, 2024 WL 274228, at *7 (Del. Ch. Jan. 25, 2024) (citations omitted) (emphasis added).

Komppa alleges that "[t]he PPA contains an implied duty of good faith and fair dealing implied by the PPA which requires NexTech [and Horowitz] not to do anything that would destroy or injure the right of Komppa to receive the benefits of the PPA." Compl. ¶¶ 162–63. Komppa's argument is, in essence, that NexTech had an implied duty to <u>accept</u> any "commitment" Komppa obtained. <u>First</u>, as discussed above, Komppa did not obtain any commitments warranting payment of the Success Fee. <u>Second</u>, the PPA specifically contemplates that NexTech may decline a proposed investment. *See* Exh. 1, § 15 (terms of PPA will survive "<u>any decision by NexTech not to proceed with a transaction</u>.") (emphasis added); *see Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*, 2011 WL 350535, * 39 (Del. Ch. Ct. August 8, 2011) ("It cannot be a violation of the implied covenant of good faith and fair dealing to exercise a contractual right."). Were it otherwise, NexTech would automatically have been liable for any proposed commitment Komppa presented, regardless of whether NexTech agreed with the terms of such commitment, which is, of course, illogical. <u>Third</u>, insofar as Komppa alleges that NexTech somehow circumvented the PPA by seeking out its own investors, the PPA says that Komppa will be the "exclusive <u>outside</u> placement agent to identify capital partners," Exh. 1, p. 1 (emphasis added), and Komppa will be the "exclusive <u>outside</u> capital raising agent for new equity," Exh. 1, § 6 (emphasis added), but nothing in the PPA (including in the "Non-Circumvention" section) bars NexTech from seeking investors. <u>Fourth</u>, an implied duty of good faith and fair dealing claim is still a breach of contract claim, and, as discussed above, any damages claim is impermissibly speculative, such that not all elements of a breach of contract claim are sufficiently alleged. Accordingly, Count IV must be dismissed.

**C.    Count IV must be dismissed as to Horowitz**.

Komppa alleges that Horowitz breached the implied duty of good faith and fair dealing arising from the PPA, but Horowitz is not a party to the PPA, and, as explained above, Komppa completely fails to allege a basis upon which veil-piercing is warranted. (Komppa's allegation that "Horowitz directed and controlled the conduct of Defendant NexTech," Compl. ¶ 181, obviously does not warrant veil-piercing.) Accordingly, Count IV must be dismissed as to Horowitz.

**III.    Counts V (Tortious Interference) Fails to State a Claim.**

Komppa's final claim is against Defendants Horowitz, Flynn, and Kestrel for allegedly tortiously interfering with the PPA and its incorporated NDA. Count V fails because Komppa was required to bring this action within three years of the alleged tortious interference, and, thus, the claim is barred by the statute of limitations. Count V also fails to state a claim because Komppa specifically pleads that Horowitz and Flynn are not strangers to the PPA and Komppa fails to plead that Defendants sought to maliciously or in bad faith injure Komppa.

**A.    Count V Fails to State a Claim.**

In order to successfully allege a claim of tortious interference with contract, a plaintiff must plead "(1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury." *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013).

As a threshold matter, Komppa fails to allege how the difficult-to-discern alleged tortious interference injured him. Komppa nowhere alleges that the alleged acts of Horowitz, Flynn, and/or Kestrel are what caused NexTech to decline the proposed "commitments" and, thus, allegedly breach the PPA by causing Komppa to not be entitled to a Success Fee. Put differently, there is no alleged proximate causation between whatever Horowitz, Flynn, and/or Kestrel did and NexTech's decision that the proposed "commitment" terms from the outside investors were unacceptable.

Further, "[i]t is well settled that a party to a contract cannot be held liable for breaching the contract and for tortiously interfering with that contract." *Kuroda*, 971 A.2d at 884 (citing *Shearin v. E.F. Hutton Group, Inc.*, 652 A.2d 578, 590 (Del. Ch. 1994)). In essence, "[i]mposition of liability for tortious interference with contractual relationship requires that the defendant 'be a stranger to both the contract and the business relationship giving rise to and underpinning the contract.'" *Tenneco Auto., Inc. v. El Paso Corp.*, 2007 WL 92621, at *5 (Del. Ch. Jan. 8, 2007) (citations omitted). Finally, to be successful, Komppa must "plead and prove that: (1) the [defendants] were "interfering part[ies]," and (2) the defendants "interfered 'not to achieve permissible financial goals but sought maliciously or in bad faith to injure plaintiffs.'" *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999).

Komppa alleges that Defendants Horowitz, Flynn, and the Kestrel entities intentionally interfered with the PPA by accessing and disclosing Komppa's work product to third persons. Compl. ¶¶ 183–194. Komppa further alleges, in a conclusory manner, that Horowitz, Flynn, and the Kestrel entities misused confidential information. *Id*. Komppa also alleges, however, that NexTech, Horowitz, Flynn, and Kestrel are "alter egos of each other" with "a common business purpose, shared resources, shared ownership, and shared personnel," *id.* at ¶¶ 133–36, and then specifically incorporates that allegation into the tortious interference count. *Id.* at ¶ 184. Komppa also alleges that Horowitz and Flynn are members of NexTech, *id.* at ¶¶ 12–14, and Horowitz is a Kestrel member. *Id.* at ¶ 16. Komppa also alleges that he "developed and provided to NexTech, Horowitz, [and] Flynn ... work product," *id.* at ¶ 55 (emphasis added), during the term of the PPA, again conflating Horowitz and Flynn with NexTech when it suits him to do so. Komppa also concedes, throughout his Complaint, that Horowitz and Flynn, as members of NexTech, were actively involved with Komppa, Komppa's services, and the business relationship under the PPA.

Thus, per Komppa's allegations, while Horowitz, Flynn, and Kestrel are not parties to the PPA or NDA, they are plainly not strangers to the PPA or the business relationship between NexTech and Komppa who would have standing to tortiously interfere with the PPA.

Finally, Komppa fails to allege in any sort of well-pled manner that Horowitz, Flynn, and/or Kestrel acted with any malice towards him or the intent to cause him injury. The tale woven by Komppa is, at best, a tale of big ideas subsequently tempered by caution, with none of the defendants alleged to have made a single penny despite all of the parties' grandiose ideas.

Accordingly, Count V (Tortious Interference) fails to state a claim and must be dismissed.

**B.      Count V is Barred by the Statute of Limitations.**

Komppa was required to bring this cause of action within three years of it arising. "In Delaware, claims for tortious interference with contractual relations are governed by [a] three year statute of limitations." *WaveDivision Hldgs., LLC v. Highland Cap. Mgmt. L.P.*, 2011 WL 13175837, at *9 (Del. Super. Oct. 31, 2011) (citing 10 Del. C. § 8106). "[T]he cause of action begins to accrue at the time a tort is committed." *Id.* Even if using the last date pled in Komppa's Complaint, November 24, 2021 (which is after the PPA expired), as the date of the alleged tort, Komppa was required to file suit by November 24, 2024. Instead, Komppa filed suit on November 10, 2025. Accordingly, Count V (Tortious Interference) is time-barred and must be dismissed.

**IV.      Komppa's Attorney's Fees Demand Should Be Dismissed Per the American Rule.**

Komppa, in his prayer for relief, includes a demand for attorneys' fees. "Delaware follows the 'American Rule' in awarding attorneys' fees, which provides that 'a litigant must, himself, defray the cost of being represented by counsel.'" *In re Delaware Pub. Sch. Litig.*, 312 A.3d 703, 715 (Del. 2024) (quoting *Dover Hist. Soc., Inc. v. City of Dover Plan. Comm'n*, 902 A.2d 1084, 1089 (Del. 2006)). Moreover, "[u]nder the American Rule governing the award of attorney's fees,

a court of law will not award attorney's fees unless a statute, contract or procedural rule makes the award explicit." *Petition of State*, 708 A.2d 983, 989 (Del. 1998) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 241 (1975); *Brice v. State of Del., Del. Supr.*, 704 A.2d 1176, 1179 n. 1, 2 (1998)). The same is true under Virginia law. *Chacey v. Garvey*, 291 Va. 1, 8 (2015) ("Virginia follows the 'American Rule,' which provides that '[g]enerally, absent a specific contractual or statutory provision to the contrary, attorney's fees are not recoverable by a prevailing litigant from the losing litigant.'") (citation omitted). The attorney's fees demand thus fails.

## V. The Claim Against Flynn Must be Dismissed for Lack of Personal Jurisdiction.

Komppa alleges one count against Flynn: Tortious Interference (Count V). Komppa alleges that Komppa is a California resident, that Flynn is a Maryland resident, that NexTech, of which Flynn is a member, is a Delaware limited liability company, and, although Komppa alleges Kestrel entities are "organized under the law of Virginia," Komppa never alleges Flynn is a member or a partner. Compl. ¶¶ 10, 11, 12, 14, 15. Komppa does not allege that Flynn ever set foot in Virginia, that Komppa ever set foot in Virginia, that any of the benefits Komppa allegedly provided to Flynn were provided while Komppa was in Virginia, or that any allegedly tortiously interfering acts performed by Flynn occurred anywhere other than Maryland.

> For a district court to assert personal jurisdiction over a nonresident defendant, the plaintiff must prove that (1) Virginia's long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction would satisfy constitutional due process requirements. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *see Combs*, 886 F.2d at 676. "Because Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause, that statutory inquiry merges with" the due process inquiry. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

*Costello v. Waste Management, Inc*., 2025 WL 2432604, *2 (E.D.Va. August 22, 2025).

Pursuant to Va. Code § 8.01-328.1 (Virginia's long-arm statute), "[a] court may exercise personal jurisdiction over a person … as to a cause of action arising from the person's" engaging in conduct enumerated in the statute. "The purpose of our 'long arm statute' is to assert jurisdiction, to the extent permissible under the Due Process Clause of the Constitution of the United States, over nonresidents who engage in some purposeful activity in Virginia." *Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc.*, 218 Va. 533, 534 (1977). In turn, "[d]ue process requires … that a nonresident have 'certain minimum contacts' within the territory of the forum so that the maintenance of the action does not offend 'traditional notions of fair play and substantial justice.'" *Id*. at 535 (citations omitted). In practice, "[b]ecause Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'" *Young v. New Haven Advocate,* 315 F.3d 256, 261 (4th Cir. 2002).

The long-arm statute applies only to "a cause of action arising from" one of the enumerated circumstances, and reiterates this requirement by stating that "only a cause of action arising from acts enumerated in this section" warrant jurisdiction under the long-arm statute. Va. Code §§ 8.01-328.1(A), (C); *see, Cordova v. Alper,* 64 Va. Cir. 87, 109 (Fairfax County 2004) (noting that "§ 8.01-328.1(C) limits the breadth of the statute ...."); *see also, id.* at 113 (citing with approval a case "interpreting 'arising from' as requiring 'a causal link between the acts relied on for personal jurisdiction and the cause of action asserted.'") (citation omitted) (emphasis added).

"The plaintiff … has the burden to establish that personal jurisdiction exists over the out-of-state defendant." *Young,* 315 F.3d at 261 (citation omitted); *Turnbull v. Desrosier,* 61 Va. Cir. 375, 379 (City of Winchester 2003) ("The plaintiff has the burden of proving jurisdictional facts under the long-arm statute."). A plaintiff must allege "a factual basis for the showing [of sufficient

jurisdictional basis], as 'conclusory pleading does not satisfy the requirements to exercise personal jurisdiction under the long-arm statute.'" *Nathan v. Takeda Pharms. Am., Inc.,* 83 Va. Cir. 216, 220 (Fairfax County 2011) (citation omitted). With the foregoing in mind, the analysis turns to the circumstances enumerated in Code of Virginia § 8.01-328.1.

Komppa plainly does not allege any basis for personal jurisdiction over Flynn pursuant to subsections (5) (breach of warranty in the sale of goods used in Virginia), (6) (real property located in Virginia), (7) (insuring a Virginia person or entity), (8) (spousal support), (9) (divorce), or (10) (taxes incurred in Virginia). Regarding subsection (1), as noted above, there is absolutely no well-pled allegation that Flynn conducted any business whatsoever in Virginia. Regarding subsection (2), there is no allegation that Flynn contracted to supply service or things in Virginia. Regarding subsection (3), there is no allegation that Flynn committed a tort while in Virginia. Regarding subsection (4), there is no allegation that Flynn caused a tortious injury to someone in Virginia while outside of Virginia. Accordingly, there is no basis for this Court to assert personal jurisdiction over Flynn, and he must, pursuant to Fed. R. Civ. P. 12(b)(2), be dismissed as a defendant.

## VI. Futility of Amendment.

In light of the fact that Komppa's claims are all time-barred, Defendants respectfully request not only that the Complaint be dismissed, but that leave to amend not be granted, as a second amended complaint would be futile. *See, e.g., Macon v. DuPont*, 2011 WL 1838785, *2 (E.D.Va. 2011) ("A court should deny a motion to amend as futile if the amended complaint could not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir.1995) (citing *Glick v. Koenig*, 766 F.2d 265, 268–69 (7th Cir.1985)); *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 420–21 (4th Cir.1990) ("There is no error in disallowing an amendment when the claim sought to be pleaded by amendment plainly would be subject to a motion to dismiss under [Rule] 12(b)(6).")).

## CONCLUSION

WHEREFORE, Defendants NexTech Infrastructure Partners LLC, Howard Horowitz, Chris Flynn, and Kestrel Venture Partners, LLC, by counsel, respectfully request that the Court grant their Motion to Dismiss, dismiss the Amended Complaint with prejudice, and grant such other relief as the Court deems fair and just.

NEXTECH INFRASTRUCTURE
PARTNERS LLC
HOWARD HOROWITZ
CHRIS FLYNN
KESTREL VENTURE PARTNERS, LLC
by Counsel

Stephen D. Charnoff (VSB No. 65329)
Hannah C. Mahn (VSB No. 100575)
Rees Broome, PC
1900 Gallows Rd.
Suite 700
Tysons Corner, VA 22182
scharnoff@reesbroome.com
hmahn@reesbroome.com
(703) 790-6233 (telephone)
(703) 852-1075 (facsimile)
*Counsel for Defendants NexTech*
*Infrastructure Partners LLC,*
*Howard Horowitz, Chris Flynn, and*
*Kestrel Venture Partners, LLC*

## <u>DECLARATION OF HOWARD HOROWITZ</u>

The exhibits attached hereto are true and accurate copies thereof, and I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the foregoing statement is true and correct.


Executed on December 29, 2025

*Howard Horowitz*
Howard Horowitz (Dec 29, 2025 10:31:39 EST)

Howard Horowitz

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of December, 2025, I will electronically file this pleading with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Richard M. Volin (VSB No. 87198)
313 Park Avenue, Suite 200A
Falls Church, VA 22046
(703) 988-1460 (telephone)
(703) 988-3484 (facsimile)
rich@volinemploymentlaw.com

Stephen L. Brodsky
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
(646) 216-8300
stephen@mazzolalindstrom.com

Stephen D. Charnoff (VSB No. 65329)
Hannah C. Mahn (VSB No. 100575)
Rees Broome, PC
1900 Gallows Rd., Suite 700
Tysons Corner, VA 22182
scharnoff@reesbroome.com
hmahn@reesbroome.com
(703) 790-6233 (telephone)
(703) 852-1075 (facsimile)
*Counsel for Defendants NexTech Infrastructure Partners LLC, Howard Horowitz, Chris Flynn, and Kestrel Venture Partners, LLC*